**PIPE MACHINERY CO., Plaintiff-Appellee, v. DEMORE ET, Defendant-Appellants.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 20888. Decided October 27th, 1947.

Stanley & Smoyer, Cleveland, for plaintiff-appellee.
Howard M. Metzenbaum, for defendant-appellants.

## OPINION

By MORGAN, J.

The Pipe Machinery Company, appellee herein, operates a plant and office on East 70th Street, just north of St. Clair Avenue in Cleveland, Ohio. It is there engaged in the manufacture of pipe threading equipment guages and small tools.

The petition in the case alleges, and the answer of appellants admits that a strike commenced at the appellee's plant on February 17, 1947. The petition also alleges that beginning with the morning of May 12, 1947, the appellants blockaded the entrance to the plant and physically impeded the entrance of those desiring to enter or leave the plant and threatened employees who continued at work with physical violence.

The appellants filed their answer which, except for formal admissions, constituted a general denial.

The cause came on for hearing in the trial court on May 23, 1947, and the bill of exceptions recites that:

"This cause came on to be heard upon the plaintiff's amended and supplemental petition; the answer of all the defendants; the admission of counsel for defendant that the facts would warrant issuance of an injunctive order to the extent requested in paragraphs 1, 2, 3, 5, 6, of plaintiff's amended and supplemental petition and a stipulation of the charges filed herein."

No admission was made with reference to the request for an injunction made in paragraph 4 of the prayer of the amended and supplemental petition, which is as follows:

"from picketing the residences of any of plaintiff's employees."

The terms of the stipulation agreed upon by the parties is as follows:

### "Stipulation.

It is stipulated by and between counsel for the plaintiff and counsel for the defendants, and the respective parties hereto, as follows:

Starting Monday, May 12, 1947, and to date, the defendants have picketed in numbers from one to four, in front of the

residences of approximately eight working employees of the plaintiff. This picketing has been by means of placards reading variously, 'as follows:

'(employee's name) is a scab. He works at Pipe Machinery. '(employee's name) is a scab. He crossed the picket line at Pipe Machinery. How can you stand to live so near him?

'(employee's name) is a scab, lives at (employee's address).

'(employee's name) scab at Pipe Machinery, lives here at (employee's address). Know your neighbor.'

In one or two instances, the pickets have called out the text of the placards in a loud tone of voice."

The trial court granted the order requested in said paragraph 4 and enjoined the defendants "from picketing before or in the vicinity of the residence of plaintiff's officers, employees or persons who desire to do business with them."

The defendants did not take any exception to the other provisions of the injunction so that the only question before this court on appeal is whether the trial court erred in granting the injunction against the picketing of residences.

It is the contention of the defendants that a court order denying them the right peacefully to picket the residences of non-striking employees constitutes a limitation of their constitutional rights.

In the case of Thornhill v Alabama, 310 U. S. 88, it was stated by the court that:

"The freedom of speech and of the press which are secured by the first Amendment against abridgement by the United States are among the fundamental personal rights and liberties which are secured to all persons by the 14th Amendment against abridgement by the State."

In the same case, the court held:

"The dissemmination of information surrounding the facts of a labor dispute must be regarded as within that area of free discussion that is guaranteed by the Constitution."

However, in the case of Bakery & Party Drivers v Wohl, 315 U. S. 769, in delivering the opinion of the court, Mr. Justice Jackson stated:

"A state is not required to tolerate in all places and under all circumstances even peaceful picketing by an individual."

Also, in the case of Carpenters' & Joiners' Union of America, local No. 213, et al, v Ritter's Cafe et al, 315 U. S. 722, the Supreme Court, speaking through Mr. Justice Frankfurter, said at page 727:

"It is true that by peaceful picketing workingmen communicate their grievances. As a means of communicating the facts of a labor dispute peaceful picketing may be a phase of the constitutional rights of free utterance. But recognition of peaceful picketing as an exercise of free speech does not imply that the states must be without power to confine the sphere of communication to that directly related to the dispute. Restriction of picketing to the area of the industry within which a labor dispute arises, leaves open to the disputants other traditional modes of communication. To deny to the states the power to draw this line is to write into the Constitution the notion that every instance of peaceful picketing—anywhere and under any circumstances—is necessarily a phase of the controversy which provoked the picketing. Such a view of the Due Process clause would compel the states to allow the disputants in a particular industrial episode to conscript neutrals having no relation to either the dispute or the industry in which it arose."

The question with which we are concerned is whether the injunction against picketing of residences is a limitation of the right of defendants to free speech. We are therefore concerned with the character and purposes of the picketing of residences in this case.

An examination of the stipulation in this case given above, shows that the picketing here did not convey any information as to the strike of the employees of the Pipe Machinery Company. No information was conveyed as to whether the strike involved a question of wages, of hours, of labor conditions, or of membership in a union. No attempt was made to disseminate such information.

The only information conveyed by the picketing was that a named employee was not a striker, but was referred to in the placards carried by the pickets, as a "scab." There were other statements directed to the neighbors of such "scabs" such as "he works at Pipe Machinery" and "he crossed the picket lines at Pipe Machinery" and that a named employee is a "scab at Pipe Machinery—know your neighbor."

In some cases the text of the placards was called out in a loud tone of voice.

It is obvious that the purpose of the picketing and of the placards was not to give the public any information as to the facts or merits of the strike. The evident purpose was to persuade or to intimidate or to coerce the non-striking employee to desist from working and to join the strikers.

An injunction restraining the defendants from picketing and circulating placards at or near the homes of working employees of the company, referring to such employees as "scabs" but conveying no further information as to the strike, does not in our opinion infringe the rights of the defendants to free speech.

The allowable area of economic conflict should not be extended to an invasion of the privacy of the home. Here dwell husband and wife, parents and children, who should enjoy immunity from the external strife of industrial dispute. The Fourth Amendment to the Constitution of the United States, and Section 14 of the Ohio Constitution both assert "the right of the people to be secure in their * * * houses against unreasonable searches and seizures."

The common law has always treated the home of a person with great respect. The home is referred to as a man's "castle" or as his "sanctuary." Picketing homes and the use of language referring to the head of the house as a "scab" would not aid in establishing the proper environment for a home. Some of the cases refer to the violated right as "the right to privacy." Such statements can generally be traced back to an article on "The Right to Privacy" in the Harvard Law Review, December, 1890, by Samuel D. Warren and Louis D. Brandeis, 4 Harvard Law Review, page 193. Mr. Brandeis afterwards became Mr. Justice Brandeis of the Supreme Court of the United States. In this article the writers state the following:

"The intensity and complexity of life attendant upon advancing civilization have rendered necessary some retreat from the world, and man under the refining influences of culture has become more sensitive to publicity, so that solitude and privacy have become more essential to the individual."

Mr. Warren and Mr. Brandeis again refer to the right of privacy as "a right of the individual to be let alone."

We are not dealing here with a limitation upon the right of free speech. It is obvious that picketing in this case was not for the purpose of dissemminating any information as to the strike. Picketing interfered with the quiet and peaceful

environment of the homes and thereby established conditions making more difficult the raising of a family and the maintenance of a home.

While in this opinion we have emphasized that the purpose of the picketing in this case was not to dissemminate any information concerning the strike, we do not wish it to be implied that the picketing of residences under any circumstances should be approved. If there is to be, in the language of the Ritter case, supra, "restriction of picketing to the area of the industry within which a labor dispute arises" any picketing of residences in a labor dispute should be enjoined. The character of the placards carried by the pickets in this case, however, demonstrates that in this case no question of free speech is remotely involved.

The judgment of the Common Pleas Court is affirmed.

HURD, PJ, and SKEEL, J, concur.