38 Cal.App.3d 637 (1974)
113 Cal. Rptr. 519
WALTER H. ANNENBERG, Plaintiff and Respondent,
v.
SOUTHERN CALIFORNIA DISTRICT COUNCIL OF LABORERS AND ITS AFFILIATED LOCAL 1184, et al., Defendants and Appellants.
Docket No. 13032.
Court of Appeals of California, Fourth District, Division Two.
April 15, 1974.
*639 COUNSEL
Richman & Garrett and Lionel Richman for Defendants and Appellants.
Adams, Duque & Hazeltine, Earl C. Adams, John H. Brinsley, Perry L. Hirsch, Best, Best & Krieger and Paul T. Selzer for Plaintiff and Respondent.
*640 OPINION
GARDNER, P.J.
Defendants appeal from an order granting a preliminary injunction enjoining all picketing of plaintiff's private residence.
Plaintiff is a man of considerable wealth and prominence  currently, Ambassador to the Court of Saint James. He maintains a vacation home in the Palm Springs area which home is located on his own private eighteenhole championship golf course. He employs a permanent staff of 38 persons of which 15 are gardeners or greenskeepers on the golf course. He has a private security force of eight. The entire estate is enclosed by a chain link fence. His guests include persons of such public stature as Presidents of the United States, governors, senators, cabinet members, and individuals prominent in the entertainment world.
Defendant union, as collective bargaining agent representing plaintiff's greenskeepers, instituted a strike and placed pickets at the entrance of the estate. On a proper and adequate showing that the picketing involved disturbances, coercion and harassment, a temporary restraining order issued limiting the number and location of pickets and restraining all disturbances, coercion and harassment. After the temporary restraining order was in effect, further disturbances occurred. Finally, a preliminary injunction was issued enjoining all picketing. However, it was issued not on the basis of any showing of disturbances resulting from the picketing but on the ground that the picketing violated the plaintiff's constitutional right to privacy and that the "policy of the law," as set forth in section 923 of the Labor Code, did not extend to domestic employees.
The first issue to be determined is whether any domestic employee has the right to picket the private home of his employer.
However, before addressing ourselves to this issue, some underbrush must be cleared away.
(1) Defendants make a somewhat tongue-in-cheek contention that by reason of his imposing guest list and his position of prominence, plaintiff's home is dedicated to a public use to such an extent that it has become the functional equivalent of private property dedicated to public use. (Lloyd Corp. v. Tanner, 407 U.S. 551 [33 L.Ed.2d 131, 92 S.Ct. 2219]; Central Hardware Co. v. NLRB, 407 U.S. 539 [33 L.Ed.2d 122, 92 S.Ct. 2238].) By this contention defendants argue that they may picket plaintiff's home just as they might picket the White House or a governor's mansion. (Flores v. City & County of Denver, 122 Colo. 71 [220 P.2d 373].) However, *641 plaintiff's position in life and his guest list, impressive though each may be, did not cause his home to "assume to some significant degree the functional attributes of [private] property devoted to public use." (Central Hardware Co. v. NLRB, supra, 407 U.S. 547 [33 L.Ed.2d at p. 128].) Plaintiff's home has not become the functional equivalent of public property by reason of his status as a public figure or his awesome guest list. It is reading too much into this record to conclude that plaintiff's home has become some kind of a quasi-public establishment.
Neither is there an issue as to any right of the defendants to come upon plaintiff's private property for picketing purposes. While Lloyd Corp., supra, and Central Hardware, supra, as well as their predecessor, Food Employees v. Logan Plaza, 391 U.S. 308 [20 L.Ed.2d 603, 88 S.Ct. 1601], (see also Schwartz-Torrance Investment Corp. v. Bakery & Confectionery Workers' Union, 61 Cal.2d 766 [40 Cal. Rptr. 233, 394 P.2d 921]; In re Lane, 71 Cal.2d 872 [79 Cal. Rptr. 729, 457 P.2d 561]) dealt with the right of pickets to come upon private property when that private property had become the functional equivalent of public property, defendants do not here contend they have the right to go upon plaintiff's private property to conduct their picketing activities. While a showing was made in support of the temporary restraining order and preliminary injunction that trespasses on plaintiff's private property had occurred, defendants do not now contend they have, or had, any right so to do. They merely contend that they have the right to use the public streets adjacent to plaintiff's home for the purpose of peaceful picketing. At the hearing on the preliminary injunction, the defendants were willing to stipulate to a continuance of the relief granted to the plaintiff in the temporary restraining order. Somehow, as so often happens, this offer to stipulate was lost in a welter of words incident to an acrimonious exchange between attorneys.
The parties in their briefs argue eloquently and at great length (112 pages) on such issues as freedom of speech, freedom of expression, peaceful assembly, equal protection of the law, privileges and immunities, the redress of grievances, the right to acquire, possess, protect and enjoy property, the oppression and exploitation of domestic employees, and the disturbances which gave rise to the preliminary injunction. While all these issues bear peripherally on the basic issue before us, we deem a full discussion of each of these issues as presented in the briefs to be an injudicious use of judicial resources.
Strangely enough, the issue of the right of domestic employees to picket the homes of their employers has presented itself but fleetingly in the plethora *642 of reported cases to be found in the abundantly litigated field of labor-management relations.
(2) We take it as well established that employees of a business or industry which is involved in a labor dispute have no constitutional right to picket the private residences of other employees or of the employers of that business or industry. (State v. Zanker, 179 Minn. 355 [229 N.W. 311]; State v. Perry, 196 Minn. 481 [265 N.W. 302]; People v. Kaye, 165 Misc. 663 [1 N.Y.S.2d 354]; Petrucci v. Hogan (Sup.) 27 N.Y.S. 718; Hebrew Home & Hospital for Chronic Sick, Inc. v. Davis, 38 Misc.2d 173 [235 N.Y.S.2d 318]; Pipe Machinery Co. v. DeMore, 36 Ohio Ops. 342 [49 Ohio L.Abs. 536, 76 N.E.2d 725].) We hasten to agree with the defendants that a careful analysis of each of the above cases subjects the above general statement to some possible refinement based on the facts of each case. However, rather than laboriously dissect each of the cases, we merely observe that the above statement finds comfortable support in the authorities cited as a general statement of law. In these cases a careful balancing of the right to picket versus the right to privacy in the home resulted in a victory for the right to privacy. In each case, the picketing was at a situs removed from the actual scene of confrontation between employer and employee  the business or industry  and the courts have uniformly held that when picketing activities are carried into the community under these circumstances, the right to privacy must prevail. However, none of these cases involve the right of a domestic employee to picket the private home of his employer.
Only two cases have addressed themselves to this issue, one directly, if inconclusively, the other tangentially.
In State v. Cooper, 205 Minn. 333 [285 N.W. 903, 122 A.L.R. 727], a dispute had arisen between a chauffeur and his employer. The chauffeur was discharged, complained to a union and as a result a union member picketed the home of the chauffeur's former employer. The picket was convicted of disturbing the peace. Justice Olson of the Minnesota Supreme Court, ostensibly writing for the majority, held directly that a domestic employee working in a private residence could not peacefully picket such a residence to enforce economic demands. This holding was based on the right of privacy of the employer in his private home. However, Justice Olson's "majority" opinion loses some of its judicial gloss by the fact that the three justices who concurred with him[1] in his affirmance of the judgment of the lower court did so on the basis that the record failed to show *643 that a labor dispute existed but that the crime of disturbing the peace had occurred. These three justices specifically declined to join with Justice Olson on the issue of the right to picket a place used exclusively as a home.
Defendants find great comfort in this bit of judicial nose counting and offer in rebuttal to Justice Olson a statement of Justice Hansen of the Wisconsin Supreme Court in City of Wauwatosa v. King, 49 Wisc.2d 398 [182 N.W.2d 530, 42 A.L.R.3d 1341]. In that case, the City of Wauwatosa had enacted an ordinance preventing the picketing of any home in the community. The ordinance contained an exception, "Nothing herein shall be deemed to prohibit (1) picketing in any lawful manner during a labor dispute of the place of employment involved in such labor dispute, ..." Justice Hansen,[2] writing for what we assume was a unanimous court, traced the tortuous trail of picketing through the United States Supreme Court, and in an eloquent defense of the right of privacy in the home determined that the ordinance was constitutionally valid. However, in discussing the above exception, Justice Hansen said: "Where the householder makes his home or residence a place of employment for someone else, for as long as it is such place of employment, he waives the protection of the ordinance as to disputes related to such fact and place of employment. Where a householder employs a maid or building service workers, in the event of dispute, the only place such employees could exercise the right to picket, that would have any relatedness to the controversy, is where they were employed... We view the exception not as denying, but as assuring, equal protection by limiting the ban on picketing the home to picketing it as a home, and permitting picketing of it as a place of employment whenever it is also that." (City of Wauwatosa v. King, supra, 182 N.W.2d 530, 538.)
To this, the plaintiff responds that the court in Wauwatosa merely held that the city council could constitutionally prohibit home picketing generally, but withheld criminal sanctions for such picketing where the home is also the place of employment and that whether a homeowner could still enjoin picketing of his home, even though it was a place of employment, was not dealt with.
Lacking any direct authority from either the Supreme Court of the United States or the Supreme Court of this state and with authority from other jurisdictions in such diluted form as to be of but slight persuasive value, we write, to all intents and purposes, on a clean slate.
*644 In disposing of the threshold issue of the right of any domestic employee to picket the private home of his employer, we must face the problem of accommodating conflicting interests. To be more accurate, it involves a careful balancing of two important and fundamental rights.
On the one hand, we have the unquestioned right of laboring men to band together for collective bargaining purposes and with this right goes the right to peacefully picket in an effort to advertise their grievances to the public.
(3) "It is now established as the law that `the right to picket peacefully and truthfully is one of organized labor's lawful means of advertising its grievances to the public, and as such is guaranteed by the Constitution as an incident of freedom of speech.' (Citations.)" (Hughes v. Superior Court, 32 Cal.2d 850, 854 [198 P.2d 885].) (4) "The Legislature has expressly declared that the public policy of California favors concerted activities of employees for the purpose of collective bargaining or other mutual aid or protection. (Citations.)" (Schwartz-Torrance Investment Corp. v. Bakery & Confectionery Workers' Union, supra, 61 Cal.2d 766, 769.) (5) "It is established that peaceful picketing or handbilling `carried on in a location open generally to the public is, absent other factors involving the purpose or manner of the picketing, protected by the First Amendment.' (Citation.)" (In re Lane, supra, 71 Cal.2d 872, 874.)
Thornhill v. Alabama, 310 U.S. 88 [84 L.Ed. 1093, 60 S.Ct. 736], is looked upon generally as the fountainhead of the right to picket. Thornhill referred to picketing as free speech within the protection of the First Amendment. However, since picketing entails conduct in addition to speech and there is ever present the danger of intimidation rather than the simple dissemination of information, numerous cases since Thornhill have considerably modified the "pure" free speech rationale and have placed limitations on picketing which would not be placed on more traditional methods of communication.[3] "But while picketing is a mode of communication it is inseparably something more and different. Industrial picketing `is more than free speech, since it involves patrol of a particular locality *645 and since the very presence of a picket line may induce action of one kind or another, quite irrespective of the nature of the ideas which are being disseminated.' (Citation.) Publication in a newspaper, or by distribution of circulars, may convey the same information or make the same charge as do those patrolling a picket line. But the very purpose of a picket line is to exert influences, and it produces consequences, different from other modes of communication. The loyalties and responses evoked and exacted by picket lines are unlike those flowing from appeals by printed word. (Citations.) ... ¶ ... (6) It has been amply recognized that picketing, not being the equivalent of speech as a matter of fact, is not its inevitable legal equivalent. Picketing is not beyond the control of a State if the manner in which picketing is conducted or the purpose which it seeks to effectuate gives ground for its disallowance. (Citations.) `A state is not required to tolerate in all places and all circumstances even peaceful picketing by an individual.' (Citation.)" (Hughes v. Superior Court, 339 U.S. 460, 464-466 [94 L.Ed. 985, 992, 70 S.Ct. 718, 721-722].)
Thus, the courts have allowed limitations of space, time and manner in picketing. Nevertheless, peaceful picketing does have its protected place in the law.
On the other hand, we have the unquestioned right of the householder or the home owner to privacy, to a sanctuary reasonably secure from outside intrusion, and to a sheltered place for the family. As our society desperately attempts to drown itself in overpopulation, this right of privacy, if not becoming more important, is, at least, receiving better recognition. It has been judicially declared that this right of privacy is well within the penumbra of the Bill of Rights. (Cal. Const., art. I, § 1; see Griswold v. Connecticut, 381 U.S. 479 [14 L.Ed.2d 510, 85 S.Ct. 1678]; Roe v. Wade, 410 U.S. 113 [35 L.Ed.2d 147, 93 S.Ct. 705]; People v. Cahan, 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513].) (7) As Justice Mosk said in People v. Dumas, 9 Cal.3d 871, at page 882 [109 Cal. Rptr. 304, 512 P.2d 1208]: "The courts have implicitly recognized that man requires some sanctuary in which his freedom to escape the intrusions of society is all but absolute. [Fn. omitted]" This right of privacy may be successfully asserted and protected in opposition to First Amendment rights. (Breard v. Alexandria, 341 U.S. 622 [95 L.Ed. 1233, 71 S.Ct. 920, 35 A.L.R.2d 335]; Kovacs v. Cooper, 336 U.S. 77 [93 L.Ed. 513, 69 S.Ct. 448, 10 A.L.R.2d 608]; Rowan v. Post Office Dept., 397 U.S. 728 [25 L.Ed.2d 736, 90 S.Ct. 1484].)
As our social and population problems become more acute, we are becoming increasingly more aware of the importance of this right to be *646 free from outside intrustion either by the state or by other individuals. Current examples which are engaging governmental interest are problems arising from sound intrusion and the misuse of computer data banks. We have finally discovered that privacy is a vital component of civil liberty, and that this right of privacy must be protected if the individual is to get a proper and just distribution of society's benefits and opportunities.
We are thus faced with the responsibility of balancing these two rights on the judicial scales. We cannot accept the premise of either party that from a constitutional standpoint, one right is paramount to the other.
However, plaintiff contends that the statutory policy of this state as enunciated in Labor Code, section 923, refers only to commercial enterprises, and, inferentially, excludes domestic employment. Labor Code, section 923, declares the policy of the state to be that since governmental authority has permitted and encouraged employers to engage in "corporate and other forms of capital control," that unorganized employees merit the protection of the state in efforts to improve their position.[4] According to this contention, picketing is proper only when necessary to convey to prospective customers the proposition that the employer is unfair in providing substandard working conditions or in receiving more than his fair share of the product or services being sold. This approach is too simplistic. The fact that domestic employees cannot be classified as industrial workers does not remove them from their classification as employees who have the same economic needs as industrial employees. Organized labor has the right to exercise collective bargaining rights in such entities as nonprofit colleges, nonprofit hospitals, nonprofit schools and, increasingly, in nonprofit governmental employment, none of which activities come specifically under the category of business or industry being operated on the profit motive. We cannot agree that Labor Code, section 923, excludes domestic employees.
*647 Plaintiff also contends that there are reasonable alternatives to picketing. This is probably true of all picketing. Certainly, defendants could air their grievances by mail or telephone, in newspapers, over the radio or television, or on the streets of downtown Palm Springs. Yet, traditionally and properly, all citizens whether in the category of organized labor or not have had the right to make their grievances known on the public streets if they do so peacefully. The fact of the existence of alternatives is not a controlling issue where the defendants demand only the right to use the public streets for picketing purposes. Clearly, this issue is of controlling importance in those cases in which the courts have allowed pickets to go upon private property after a finding that the private property has become the functional equivalent of public property. However, since Hague v. C.I.O., 307 U.S. 496 [83 L.Ed. 1423, 59 S.Ct. 954], the right to use the public streets for the dissemination of information and opinion has not been challenged. Clearly, the place of employment is the traditional and proper focus for picketing activity. The rationale of "reasonable alternatives" is a factor to be placed in the weighing process but is not controlling.
(8a) Thus, faced with no controlling authority, either constitutional, statutory or by case law, we weigh the rights of the parties from the standpoint of the dynamics of the social conditions with which we are faced and the public interest and private needs of the parties involved.
On the one hand, we face the unpleasant fact that any picketing under these circumstances, no matter how peaceful, or how well controlled, is an intrusion into the privacy of the home. One placard-carrying picket walking silently on the sidewalk or street in front of a man's home is an invasion into the privacy of that home. On the other hand, the economic needs of the domestic employee must be considered. When a householder hires domestic help, two things occur. First, a stranger intrudes into the household. Second, the household enters in a limited degree into the economic marketplace. The isolation of the household has to a certain extent been stripped away. The householder has become an employer and with that status takes on certain social responsibilities not present in the vast number of households which do not use domestic help. When one hires someone else to mow his lawn, wash his dishes or drive his car, he exposes himself to the economics of the labor market. Having done so, he faces the unpleasant fact of life that the economic needs of his domestic employee are identical with those of the industrial employee. The food bill of a greenskeeper or maid on the plaintiff's estate is the same as the food bill of a greenskeeper working at the nearby Thunderbird Country Club or a maid working at a Hilton Hotel. The price of a can of beans is the *648 same for each. When one accepts employment as a maid, gardener, chauffeur, housekeeper or babysitter in a private home, he does not thereby become some kind of a second class working person. To put it bluntly, a domestic employee can get as hungry as can an employee of an industrial giant.
(9) After carefully considering the various factors in the delicate balancing process involved, we conclude that the trial court was in error in its holding that no domestic employee has a right to picket the private home of his employer. However, the issue must be faced on a case-to-case basis. We deliberately refrain from a ruling that all domestic employees have the right to picket the private residences of all domestic employers. Under some circumstances, such picketing would be such a serious invasion of the right of privacy that the court in the exercise of its discretion could well prohibit all picketing of that particular home. Under other circumstances, such picketing would not involve such a serious invasion of the right of privacy. Then after weighing the factors involved, the court in the exercise of its discretion should allow picketing, severely limited in time, space and manner, in order that the intrusion into the privacy of the home be kept at an irreducible minimum.
(8b) The instant case fits the latter category. Plaintiff's estate cannot be equated with a "normal" residence. His home is surrounded by a golf course, security guards, and a protective fence. In other words, he enjoys a degree of privacy experienced by only an exclusive segment of society, and picketing, under these circumstances, constitutes a minimal intrusion into his privacy. While there may be an annoyance at the sight of a picket at one of the entrances of the estate, this annoyance is a matter of only temporary or passive distress. On the other hand, the economic needs of plaintiff's employees are a matter of 24-hour concern to those employees. Therefore, we hold that under the unique facts of this case plaintiff's employees have a right to peacefully picket his estate.
Since the showing in the lower court was such that injunctive relief was proper, we reverse the order simply because the basis for the court's ruling was that domestic employees had no right to picket, peacefully or otherwise. This in no way divests the court of the power and duty to make a proper order restricting picketing to the public streets, limiting the number and location of the pickets, and restraining their activities in order that the picketing be peaceful and constitute a minimum of intrusion into the privacy of plaintiff's home. The violent acts, mass picketing and trespasses *649 which occurred prior to the issuance of the preliminary injunction were not protected activity and were properly enjoined.
Kerrigan, J., and Gabbert, J., concurred.
NOTES
[1] One justice dissented; one justice was ill and took no part in the decision.
[2] Robert W. Hansen. There are two Hansens on the Supreme Court of the State of Wisconsin.
[3] "Examination of United States Supreme Court decisions on this point reveals that earlier intimations that picketing might be no more than a communication of ideas, [fn. omitted] have had to yield `"to the impact of facts unforeseen," or at least not sufficiently anticipated.' [Fn. omitted] One such fact clearly is that the element of physical patrolling in picketing itself can induce action very different from the point of view being communicated. [Fn. omitted] In a number of cases the United States Supreme Court has made clear the fact that picketing involves more than an exercise of free speech, and that the conduct involved is subject to public regulation. [Fn. omitted]" (City of Wauwatosa v. King, supra, 182 N.W.2d 530, 533.)
[4] Section 923, Labor Code, reads: "In the interpretation and application of this chapter, the public policy of this State is declared as follows:

"Negotiations of terms and conditions of labor should result from voluntary agreement between employer and employees. Governmental authority has permitted and encouraged employers to organize in the corporate and other forms of capital control. In dealing with such employers, the individual unorganized worker is helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment. Therefore it is necessary that the individual workman have full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection."