CHARLES M. NESS *v.* SUPERVISORS OF ELECTIONS OF BALTIMORE CITY.

[No. 35, April Term, 1932.]

*Decided April 12th, 1932.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*William Milnes Maloy,* for the appellants.

*Wm. Preston Lane, Jr., Attorney General,* and *Willis R. Jones, Deputy Attorney General,* with whom was *William L. Henderson, Assistant Attorney General,* on the brief, for the appellees.

BOND, C. J., delivered the opinion of the Court.

The appeal in this case was disposed of by an order affirming the order of the trial court, without an opinion at the time explaining the decision, because it was desirable that a question raised as to the legality of a referendum vote arranged to be taken at an early date be answered without any delay that might be avoided. The present opinion is the explanation of the decision already announced, and of the order in pursuance of it.

At the session of 1931, the General Assembly passed an act, chapter 287, to except Baltimore City from the operation of the state law regulating Sunday observance (Code, art. 27, secs. 483, 484, and 485), upon the passage of a municipal ordinance to govern the subject in the city, and upon the approval of that ordinance by popular vote in the city. And the validity of the act, and of an ordinance passed under it (No. 130 of 1932), are questioned in this proceeding.

The first section of the act has provided generally that the Mayor and City Council of Baltimore, in furtherance of the principle of home rule, and for the purpose of promoting reasonable and proper observance of Sunday, shall have power to regulate by ordinance amusements, entertainments, and games, and the sale of articles of merchandise at retail on that day. The second section has provided that no ordinance passed in the exercise of that grant of power shall take effect until it has "first been submitted to the qualified voters of the City of Baltimore at either a general or special election, State or municipal, and * * * approved by a majority of the voters voting thereon." The Mayor and City Council are authorized and empowered "to determine the time, place and manner for the submission of any such ordinance to the

qualified voters, and for the voting thereon and for ascertaining the results," and for that purpose to use the registration list, books, ballot boxes, and other election paraphernalia and agencies of the board of supervisors of elections of the city. "In the case of a special election the general election law of the State, wherever applicable, shall likewise apply." The third section has enacted that the general Sunday law of the state shall not apply to the city, but shall be repealed in so far as it has prohibited amusements, entertainments, and games, and retail sales of merchandise in the city on Sunday, with the proviso that the repeal shall not take effect until after a city ordinance passed in pursuance of the grant of power in section 1. of the act of assembly shall be approved by the popular vote provided for in section 2. Section 4 repeals all inconsistent laws or parts of laws to the extent of the inconsistency.

In pursuance of that act, an ordinance, No. 130, approved February 15th, 1932, has been duly passed by the municipality, with a provision that it be submitted to the voters at a special election on May 2nd, 1932, the day fixed by law for the holding of primary elections in the state. Separate ballots for the vote on the approval or disapproval of the ordinance, upon paper of a distinctive color, are to be prepared and used. The ordinance by its terms has provided that specified amusements, games, and sports for profit shall be permitted after 2 o'clock P. M. on Sundays, and, when for recreation only and not for profit, these and others shall be permitted at any hours on Sundays. Retail sales are likewise to be permitted within restrictions.

The appellants filed a petition for the writ of mandamus to prevent the supervisors of elections from proceeding with the preparation of ballots and the taking of the vote on the ordinance; the supervisors answered, questioning the qualifications of the petitioners as suitors, and, while conceding the essential facts alleged in the petition, contested the conclusions of law and the claims based upon them; the petitioners replied, in effect joining issue on the controverted questions of fact, those of the qualifications of the suitors, and de-

murring to the contentions of law in the answer in a series of formal denials of their validity. The trial court, as the tribunal on the facts, upheld the qualifications of the petitioners, but, disagreeing with their contentions on the law, held that the act of assembly and the ordinance were valid, and therefore overruled the petitioners' demurrers, dismissed their petition, and entered a judgment for the respondents for costs. And this court on appeal has concurred in the rulings on the law, upon the reasoning to be stated.

Attacking the ordinance, the appellants object, first, that the taking of the vote on the day of the primary election is illegal. Regarding the provisions in the authorizing act of assembly as restricting the taking of the vote to a regular state or municipal election, general or special, it is contended that the choice of this day does not comply with those provisions, because the primary election is not such a general or special election, state or municipal. Further, it is contended that, as there is no provision in the charter of the city for holding a special election, the city cannot be given the power to hold one without an amendment of its charter under the Home Rule Amendment of the Constitution (article 11A). The first argument seems to confine the meaning of the statute too narrowly. Its language leaves no room for doubt that the city is intended to be given power to take the vote at an election of any description, when and as it may choose, for the approval or disapproval of the ordinance. That construction follows from the express authority "to determine the time, place and manner for the submission of the ordinance." And there seems to be no legal obstacle to taking this special vote on the ordinance simultaneously with the holding of the primary election. In *Levering v. Board of Supervisors*, 129 Md. 335, 339, 99 A. 360, 361, the court considered an act of assembly which provided for submission of an ordinance to the voters of the city "at such time and place as may be fixed by said ordinance," and found that this "conferred unlimited discretion upon the mayor and city council as to the selection of the time and place for securing an expression from the voters upon questions of the character just indi-

cated." And, said the court, further, "by virtue of this ample authorization, and in accordance with the terms of particular statutes referring to the constitutional provision we have cited, numerous questions relating to loans and appropriations * * * have been submitted at general elections to the voters of Baltimore City. The ordinances which have appointed a general election as the occasion for taking the vote required by the Constitution, in the instances specified, have been passed in the exercise of an unqualified power expressly conferred." And the present selection of the primary election day seems fully as well supported by the authority given. It may be true, as is argued, that some difficulties will be experienced in carrying on the special election on the ordinance in accordance with the general election law of the state, wherever applicable, and in conjunction with a primary election which is governed by somewhat different regulations, but the difficulties, if they exist, would seem to be practical rather than legal. At least no legal question can be foreseen as sure to arise out of the effort. And the authority so given is legal, we think, even if not clothed in the form of an addition to the general charter powers of the city, in accordance with requirements of the Constitution, article 11A, for the election authorized is to be only a step in the adoption of the particular ordinance, and not one in the exercise of a power of governmental regulation of the affairs of the city, to which the constitutional clause applies. *State v. Stewart,* 152 Md. 419, 137 A. 39.

Considering the act of assembly as an attempt at enlargement or extension of the powers of the city, it is contended that it is invalid because it has not conformed to the limits imposed upon legislative action in the field of local law by this Home Rule Amendment to the Constitution (article 11A). As this court had occasion to declare in *State v. Stewart,* 152 Md. 419, 137 A. 39, once the city had accepted a charter under that amendment, the General Assembly could no longer pass local laws upon subjects included within the powers specified in the charter as those to be exercised by the city, but could only enlarge, diminish, or change the

grants of such powers. It could not share one of the granted fields of local law with the city, but could only change the right to those fields or parts of them, as between the State and the city. And it is now contended that this present act of 1931 attempts to provide. for local regulation without changing the grant of power over the field. The contention is that, to convey the authority which this act attempts to convey, there must be a direct and express modification in the specification of local powers included in the home rule charter as it is. In answer to this it might be urged that the phraseology of a grant of power is used, and that the act leaves little, if anything, to be added to meet the objection, if there should be need of an express addition to the granted powers. But can there be any question of need of an addition to those powers in the charter, in view of the fact that the charter already includes a comprehensive grant of the police power, under which Sunday laws would be passed? Such a comprehensive grant of the police power is contained in article 4, section 6 (18), of the charter (Code Pub. Loc. Laws 1930, art. 4), and it is amply broad enough to cover all Sunday regulation, but has been subject to the restriction resulting from the existence of a superior general state law. *Levering v. Board of Park Commissioners*, 134 Md. 48, 54, 106 A. 176. It is settled that under that power the city might, even before the approval of the ordinance now proposed, pass Sunday laws consistent with the general law, though more far-reaching in their restrictions or penalties. *Hiller v. State*, 124 Md. 385, 394, 92 A. 842; *Rossberg v. State*, 111 Md. 394, 74 A. 581. It is to be borne in mind that the General Assembly has under the Home Rule Amendment two powers, the exercise of which may affect the charter powers of the city. It has reserved to it that just described, the power to enlarge, diminish, or change the granted powers over local law specified in the charter, and it has reserved to it complete power to pass, alter, or repeal general state laws on the subjects included within those municipal powers. And with the city already possessed specifically of the broad police power contained in the charter section mentioned, the

new act of assembly cannot properly be regarded as actually doing more than to withdraw the general law from conflict so far as the city is concerned. While it may be considered as in substance and effect a local law, inasmuch as its whole object and purpose concerns the city alone, it is not in itself a local regulation, and not exactly an alteration in the charter powers. The local regulation of Sunday observance is now left to the city, and the act cannot be said to have added to the grant of the police power which has heretofore been given, but left restricted only by the existence of the superior general law. In this legal situation we see no ground for challenging the statute.

A further objection has arisen from making the withdrawal of this general state regulation from the local field dependent upon the result of a local popular vote. Is this making the promulgation of general state-wide legislation dependent upon the vote of people in only one part of the state, or is the legislation to be regarded as local only? A general law cannot be so left to the vote of one locality. "A different principle controls where the act in question is local in its operation and effect only." *Levering v. Board of Supervisors,* 137 Md. 281, 288, 290, 112 A. 301. The act is to be classified by its subject-matter and substance, and not by its form merely. *State v. Stewart,* 152 Md. 419, 425, 137 A. 39. And in the opinion of this court the subject-matter and substance of the present act can be regarded only as local. The whole object and effect of it are to make a local exception to the general regulation of Sunday observance, or to leave the one locality free to promulgate its own regulations. The act is precisely the same in character as if it had in a more direct manner provided merely that Baltimore City should be free to enact its own regulations, if the voters should approve an ordinance embodying the regulations, leaving the resulting partial repeal of the general law to implication. No need would be felt for laboring this point were it not for a similarity between the present act and that which the court, in *Levering v. Board of Supervisors, supra,* classed as a general law, and held to have been improperly left to the vote in the

one locality. The act considered in that case, Act of 1920, chap. 522, in terms repealed and re-enacted the general Sunday laws as now included in the Code (art. 27, secs. 483 and 485), but with provisos excepting from their prohibitions the exhibition of moving pictures in Baltimore City; and it referred the whole new act to popular vote in the city. The repeal and re-enactment of the general law with the local exception were classed as general legislation. And the act now being considered provides for a repeal and re-enactment of the general law as it was, but refers to the popular vote in the city only the ordinance authorized, the General Assembly itself in terms making the repeal and re-enactment of the general law necessary to accomplish the exception, but making it contingent upon the substitution of a city ordinance with the approval of the voters. There may be room for a difference of opinion on the question whether the more recent act has avoided the features which were held to give the former act the character of a general law, but a majority of the judges of this court think the two acts are substantially similar in character. Nevertheless, after full argument and reflection, this court is clearly of opinion that, regarding the actual substance and purpose of the present act, it can be classed only as local, as has been explained; and the majority agree that, in so far as the decision in *Levering v. Board of Supervisors, supra,* would as a precedent fix upon it the character of a general law, on which a local referendum would not be permissible, that decision must be, and it is now, overruled. It is held that the Act of 1931, ch. 287, is a local law, and that a provision for a referendum vote on the ordinance to be passed in pursuance of it is not one for a local referendum on a general law.

It is settled that the General Assembly may properly make the effectiveness of a local law dependent upon a popular vote in the locality. *Fell v. State,* 42 Md. 71.

Discriminations in the ordinance between activities to be permitted and those not to be permitted on Sundays are objected to as unconstitutional because of the inequality of treatment of citizens engaged in the activities of the one

group and the other, and because of supposed deprivation of the liberty and property of those whose activities are excluded, without due process of law. Fourteenth Amendment of the Constitution of the United States. Declaration of Rights of Maryland, arts. 19 and 23. And, that there are discriminations which cannot be explained or justified by reasons is possibly true. But what is tolerable and what intolerable in Sunday observance seems to be a question which cannot be fully answered by a process of reason. It is to a large extent determined by the public conceptions of proper respect for the day, and these conceptions are the outcome of public sensibilities not based entirely upon any process of reasoning. Regulations to conform to the public conceptions can, perhaps, be less easily shaped by logical reason than almost any other governmental regulations. The constitutional prohibitions stand ready to prevent a clearly arbitrary and oppressive discrimination. *Mogul v. Gaither,* 142 Md. 380, 388, 121 A. 32. But the mere fact of inequality is not enough to invalidate a law, and the legislative body must be allowed a wide field of choice in determining what shall come within the class of permitted activities and what shall be excluded. *Missouri, K. & T. R. Co. of Texas v. Cade,* 233 U. S. 642, 650, 34 S. Ct. 678, 58 L. Ed. 1135; *Jeffrey Mfg. Co. v. Blagg,* 235 U. S. 576, 35 S. Ct. 167, 59 L. Ed. 364; *Mountain Timber Co. v. Washington,* 243 U. S. 219, 242, 37 S. Ct. 260, 61 L. Ed. 685; *Mogul v. Gaither, supra.* The court, following these guiding principles, fails to find in the ordinance such obviously arbitrary and grievous discrimination in the effort to devise the new Sunday regulations as would justify a holding that the constitutional prohibitions forbid it.

A question of the right of the plaintiffs to maintain the suit has been raised, but it is not necessary to dwell upon it. All appear as citizens and taxpayers, and, so long as the individuals may sue in their own right, an objection that they profess to appear as a committee, and by doing so violate the rule against suits at common law by agents or representatives, seems unimportant.

There are other objections suggested in the course of argument, but not themselves argued. No ground has been seen in any of them for issuing the writ of mandamus sought.

It is for these reasons that the court found and ordered, as previously announced, that the order of the trial court must be affirmed, with costs to the appellees.