**FAWICK AIRFLEX COMPANY INC.**, Plaintiff-Appellee, v.
**UNITED ELECTRICAL, RADIO AND MACHINE WORKERS OF AMERICA, LOCAL 735** et Krause et, Defendants-Appellants.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 21494. Decided March 6, 1950.

Marshman, Hollington & Steadman, Cleveland, for plaintiff-Appellee.

Jerome Land, Elsie R. Tarcai, Charles Goodwin, Winfred Martindale, Cleveland, for defendants-appellants.

(CONN, PJ, of Sixth District; HUNSICKER and DOYLE, JJ, of Ninth District, sitting by designation in Eighth District.)

## APPEAL ON QUESTIONS OF LAW

By HUNSICKER, J:

In this appeal on questions of law, the facts disclose that: United Electrical, Radio & Machine Workers of America, Local 735, called a strike at the plant of Fawick Airflex Co. Inc., after alleged violence incident to such strike, an injunction was obtained in the Common Pleas Court of Cuyahoga County, Ohio, regulating peaceful picketing of the Fawick plant; certain persons were charged with a violation of such order; some of those so charged were tried and found guilty of the contempt charges on April 8, 1949; others were awaiting trial on such charges; newspaper and radio comment of the outcome of the hearing of April 8, 1949, was widespread throughout the community.

The appellants herein (defendants below) Joseph Krause, Norman N. Derman, Foster L. McCurdy, Dolph M. Barnett, Frieda L. Kreitner and Robert Evans, by prearrangement and prior design, along with ten or fifteen others desiring to display their disapproval of the court order in the contempt

cases and to display the attitude of certain groups toward the judge who entered the order, met at and near the home of the trial judge to impress upon him their attitude and that of those whom they sought to represent. The judge called the police to his home, and, before any extended demonstration could begin, the police told the group assembled there to disperse, which they did.

In addition Berman and Krause each wrote letters to the judge setting out in their communications in insulting and scurrilous language their denunciations of the action of the judge in the contempt cases. By direct threats and innuendo, these letters accused the judge of corruption and dictatorial conduct which they, the writers, and those whom they claimed to represent, would correct at some indefinite future time. Berman wrote two of such letters which he mailed to the judge. Krause also wrote two letters, one of which he mailed to the judge, the other (which Krause said was a grammatical correction of the first letter) he gave to a police officer when questioned concerning the first letter.

On April 14, 1949, motions were filed against all of the defendants, named above, directing them to show cause why they should not be punished as for contempt of court for their conduct in demonstrating before the home of the judge, and, in addition, as to Berman and Krause, for writing the letters above referred to.

A hearing was had (before the judge whose home was picketed and to whom the letters were addressed) on these charges of contempt. The trial court found each defendant guilty of various acts of contempt and entered judgment accordingly.

It is from such judgments of guilt that the cause is before this court for review on questions of law.

There is no occasion for this court to make extended comment on the propriety of the trial court hearing the charges as made. The impulse to consider criticism as obstructive is a real danger. A trial court under such conditions may not be wholly objective. The record bears some evidence of a departure from such objectivity, both in the rulings of the court and the summation by the court at the conclusion of the hearing. Nevertheless, we do not find prejudice on the part of the trial judge which prevented the defendants from having a fair trial.

The evidence, except in the one instance, hereafter set out, will support the judgment of contempt, so that the determinative question before this court is one of law only.

May a judge punish, as a contempt of court (1) one who pickets his home to show a dissatisfaction with a decision

of the judge in matters pending before the court over which such judge presides; (2) one who writes insulting and threatening letters to such judge expressing disapproval of a decision of the judge in matters pending before the court over which such judge presides?

It is not necessary for us to pass on the legal nature of the alleged contempts, whether summary or indirect, since written charges were filed and a formal hearing was had.

All of the matters complained of herein took place outside of the court room. The people gathered at the home of the judge; the letters were sent to his home. There was nothing done in his presence at the court house; all of the action was directed to the place where he lived, during an interim in the proceedings.

There were matters related to the decision which the defendants complained about still pending before the court. Only part of the contempt cases against the Fawick strikers had been heard. Others were awaiting hearing and disposition.

The statutes of Ohio (§12136 et seq., GC), give authority to the courts to punish contempts, but such legislative action does not abridge the inherent power of a court to punish a contempt.

**Hale v. State, 55 Oh St 210; Steube v. State, 3 O. C. C. 383; Beach, Jr. v. Beach, 79 Oh Ap 397.**

There is, of course, no question as to the power to punish as for contempt, disturbances and disorder in the court room. The actions here under review are those actions which by threat, coercion, force and intimidation of the presiding officer of a court seek to produce a disorderly, unfair and distorted administration of justice.

The highest court in our country has, in two very important decisions, defined and restated the test by which the constitutional guarantees of the first and fourteenth amendments of the Constitution of the United States are to be reconciled with the preservation of an independent judiciary.

In Bridges v. State of California, 314 U. S. 252, 86 L. Ed. 192, and Pennekamp v. State of Florida, 328 U. S. 331, 90 L. Ed. 1295, the Supreme Court of the United States adopted the objective test of the clear and present danger rule with respect to contempt of court convictions. The test in matters of this kind is: Are the words used, or the actions engaged in, of such a nature as to create a clear and present danger that they will bring about a substantial interference with the orderly administration of justice?

Where strangers to the neighborhood congregate about the vicinity where a judge resides, with an avowed view in mind

to demonstrate their disapproval of the judge and his decision, such conduct, however short its duration, or however peaceful it became in the presence of police officers, is conduct that would bear heavily in the mind of the normal public official.

If a judge is to have hovering over him the possibility that harm or disorder are to be a constant threat to his home and family whenever those who disagree with him decide to engage in such conduct, then judicial decorum and dignity are lowered to the caterwauling of the ill-mannered and depraved.

A person who seeks to influence a judge in matters pending before him, by disturbances to his home and family, by picketing or other like demonstrations thereat, is, in the judgment of this court, clearly guilty of a contempt of the court over which such judge presides and may be punished accordingly.

The appellants claim that it is a denial of free speech for the judge to find Berman and Krause guilty of contempt of court for writing letters of condemnation to the judge concerning the matters set out above.

It should be noted that there is no testimony that the letters which form the basis of the charge of contempt were published by the parties. They were sent to the home of the judge, and, so far as the evidence discloses, would not have been generally known except for the action of the judge himself.

The letters were more the actions of twisted and distorted minds than those of normal human beings. They were written in bad taste and poor grammar by a person devoid of decency and propriety.

We adopt the view that any language by which it is intended to influence the action of a judge, or language that has a tendency to influence him, is a danger to the impartial administration of justice, and, hence, not to be protected by the right of free speech guaranteed by the first and fourteenth amendments of the Constitution of the United States.

It is very important that our courts be not intimidated by litigants or partisans of litigants, but it is equally important that the freedom of tongue and pen be not shackled, unless the danger to an independent and free judiciary is clearly shown.

See Bridges v. California, supra.

"Judicial dignity is an important element of our system and serves a real legal function. In itself, even when it is without importance for the actual conduct of litigation, it

serves at least a social function since we like our high officials to be treated with respect and judges are high officials. So is the President of the United States. To be lacking in respect either to a judge or to the President, is a violation of good manners. Gentleman will not be guilty of it. It is, however, not a legal duty to be well mannered and it may even be said that it would be unconstitutional to make it one. But there is no reason why the dignity of the court should take such dimensions or assume such character that it demands awe or veneration. There is no **crimen laesae maiestatis** in the United States and we need not grant a judge a position that we deny the chief magistrate of the nation. So long as the judge's actual functions remain unimpaired, he must contest himself with the outward respect of his well-bred fellow-citizens and must learn to be indifferent to the abuse of those who are ill-bred."

36 Illinois Law Review, 599 at pp. 610-611 Freedom of Speech and Contempt of Court, by Max Radin.

When we examine these letters, we find that plaintiff's exhibit C (the second Berman letter), although written in bad taste, does not, under the test as established by the Supreme Court of the United States, create a clear and present danger to the orderly process of justice and the courts. We do not believe, in so far as this letter is concerned, that a judgment of guilty of contempt is proper.

The situation as to Exhibit D (the first Berman letter) and exhibit F (the Krause letter) present a much different state of affairs. The threats to the judge personally, the charges of undue influence exercised by those who, it is claimed, control the courts and this trial judge in particular, and the direct charge of corruption leveled at him, do present a clear and present danger to the orderly administration of justice.

To charge a judge with being corrupt, means, according to Webster's New International Dictionary, Second Edition, that he is

"2. Changed from a state of uprightness, correctness, truth, etc., to a bad state; vitiated; depraved; debased; perverted, * * *."

The charges against the trial judge contained in Exhibit D and Exhibit F, do not bear the slightest resemblance to honest criticism. Coupled with the threat of possible violence to be meted out to the judge in "much more quicker time to come" their evil nature and threat to impartial justice is present and clear.

The record of testimony indicates that these defendants made no offer or attempt to purge themselves of the contempts with which they were charged. They did not testify in their own behalf, nor in any manner seek, either personally or by counsel, to clarify their intentions.

The contempt trials out of which developed the actions of these defendants, were not concluded, a part only had been heard, others remained to be tried before this trial judge. Thus, to all fair-minded persons can readily be seen a clear and present threat to the orderly and impartial administration of justice.

We have examined all other claimed errors, and find none prejudicial to the rights of the appellants.

The judgment is, as to Joseph Krause, Foster L. McCurdy, Dolph M. Barnett, Frieda L. Kreitner, and Robert Evans affirmed. As to Norman N. Berman, the judgment is affirmed as to the first letter, and as to the picketing, but reversed as to the second letter, and final judgment rendered for him thereon.

A journal entry will be prepared by the attorneys in accord with this opinion.

CONN, PJ, DOYLE, J, concur.