STATE OF MARYLAND *v.* PHILLIP SCHULLER
AND SEAN OZZIE SIMPKINS

[No. 89, September Term, 1976.]

*Decided May 6, 1977.*

The cause was argued before SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ., and ROBERT F. SWEENEY, Chief Judge of the District Court of Maryland, specially assigned.

*Alexander L. Cummings, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellant.

*Gary Howard Simpson* for appellees.

ELDRIDGE, J., delivered the opinion of the Court.

The question presented by this case is whether certain provisions of Chapter 773 of the Acts of 1971, codified in Maryland Code (1957, 1976 Repl. Vol.), Art. 27, § 580A, violate the First and Fourteenth Amendments to the

Constitution of the United States. That statute prohibits, *inter alia,* all residential picketing except for picketing in connection with a labor dispute.

The defendants, Phillip Schuller and Sean Simpkins, were arrested and charged with "picketing before and about . . . [a] residence or dwelling place" in violation of Code (1957, 1976 Repl. Vol.), Art. 27, § 580A. According to an agreed statement of facts submitted by the parties, on April 14, 1976, the defendants, with six other individuals, picketed the home of Donald H. Rumsfeld. At the time, Mr. Rumsfeld was Secretary of Defense and resided in Montgomery County, Maryland. In response to a complaint made by one of Mr. Rumsfeld's neighbors, a Montgomery County police officer arrived and informed the picketers that their actions were unlawful. The officer was told that the group, known as "The Community Action for Non-Violence," was picketing for the purpose of protesting "the proliferation of nuclear armaments of the United States Government." The officer observed two individuals carrying picket signs and others, at various times, either walking in front of Mr. Rumsfeld's residence or sitting on the curb in front of his home.

Shortly thereafter, three more police officers arrived, and the group of picketers was warned by each of these officers that their behavior was in violation of the law. At this time, the officers told them to "cease and desist" from their activities, and four members of the group immediately left the area. The other four individuals, including the defendants, who refused to leave were placed under arrest.

The parties stipulated further in the agreed statement of facts that the individuals who were arrested were peaceful and at all times cooperative with the police. Moreover, "at no time during the picketing activity did any of the picketers obstruct traffic, become disorderly or otherwise disturb the neighbors other than through their picketing activity." Also, the picketing took place on public property, and there was no allegation that the picketers trespassed on private property.

On June 14, 1976, in the District Court of Maryland, sitting in Montgomery County, the defendants, Schuller and

Simpkins, were tried and found guilty of unlawful picketing. Each of the defendants received a five-day suspended sentence and was placed on unsupervised probation for ten days. Upon appeal to the Circuit Court for Montgomery County (Miller, J.), the charges against the defendants were dismissed. The court held that subsection 2 of Art. 27, § 580A, which prohibits all residential picketing, was "unconstitutional on its face because it unreasonably and improperly impinges upon the defendants' rights of Freedom of Speech and Assembly protected by the First Amendment." Furthermore, the court held that subsection 4 (1) of Art. 27, § 580A, which exempts certain labor related picketing from the general prohibition against residential picketing, violated "the Defendants' rights of Equal Protection of the Laws guaranteed by the Fourteenth Amendment."

Pursuant to Code (1974, 1976 Cum. Supp.), § 12-305 of the Courts and Judicial Proceedings Article, the State petitioned for a writ of certiorari which we granted in order to consider the constitutional questions involved.

Chapter 773 of the Acts of 1971, Art. 27, § 580A, provides in pertinent part:

"* * * *

"2. It shall be unlawful for any person to engage in picketing before or about the residence or dwelling place of any individual.

* * *

"4. Nothing herein shall be deemed to prohibit (1) any picketing or assembly in connection with a labor dispute as that term is defined in Article 100, § 74 of the Annotated Code of Maryland (1964 Replacement Volume), title "Work, Labor and Employment," subtitle "Injunctions," as heretofore and hereafter amended; (2) the picketing in any lawful manner a person's home when it is also his sole place of business; . . .

"5. Any person found guilty of violating this section shall be punished by a fine of not more than one hundred dollars or by imprisonment for not more than 90 days, or by both. Each day on which a violation of this section occurs shall constitute a separate offense.

"6. Notwithstanding the penalties herein provided, any court of general equity jurisdiction may enjoin conduct proscribed by this article, and may in any such proceeding award damages, including punitive damages, against the persons found guilty of actions made unlawful by this section." [1]

The State argues that a prohibition against all residential picketing is not violative of the First and Fourteenth Amendments to the United States Constitution. The State contends that statutes prohibiting picketing of residential dwellings are a constitutionally valid exercise of the state's police power to "protect individual privacy by enacting reasonable time, place and manner regulations applicable to all speech irrespective of content." The State argues further that the exemption of labor related picketing does not create a classification which violates the Equal Protection Clause, as the classification serves a compelling state interest. The defendants, on the other hand, reiterate their argument that the statute violates their right to freedom of speech and assembly and their right to equal protection of the laws.

(1)

The constitutionality under the First Amendment of prohibitions against residential picketing, whether arising

---

1. Subsection 3 of Art. 27, § 580A, goes on to prohibit any person from intentionally assembling "with another person or persons in a manner which disrupts any individual's right to tranquility in his home." Subsection 4 (3) exempts from this general prohibition "the holding of a meeting or assembly on any premises commonly used for the discussion of subjects of general public interest." Since the defendants were not charged with unlawful assembly in violation of subsection 3, the constitutional questions in this case do not extend to subsections 3 and 4 (3).

under an anti-picketing statute similar to Maryland's or arising under general statutes prohibiting breach of the peace or disorderly conduct, has been considered by lower federal courts and state courts, with a resultant diversity of decisions. *Compare, e.g., Davis v. Francois*, 395 F. 2d 730 (5th Cir. 1968); *United Electrical, R. & M. Workers v. Baldwin*, 67 F. Supp. 235 (D. Conn. 1946); *Annenberg v. Southern California District Coun. of Lab.*, 38 Cal.App.3d 637, 113 Cal. Rptr. 519 (1974); *Flores v. City and County of Denver*, 122 Colo. 71, 220 P. 2d 373 (1950); *State v. Anonymous*, 6 Conn. Cir. 372, 274 A. 2d 897 (1971-2); *Hibbs v. Neighborhood Organ. to Rejuv. Tenant Hous.*, 433 Pa. 578, 252 A. 2d 622 (1969); *with Garcia v. Gray*, 507 F. 2d 539 (10th Cir. 1974), *cert. denied*, 421 U. S. 971, 95 S. Ct. 1967, 44 L.Ed.2d 462 (1975); *Fawick Airflex Co. v. United Electrical, R. & M. Wkrs.*, 87 Ohio App. 371, 92 N.E.2d 446 (1950); *Pipe Machinery Co. v. DeMore*, 76 N.E.2d 725 (Ohio App. 1947); *State v. Perry*, 196 Minn. 481, 265 N. W. 302 (1936); *City of Brookfield v. Groppi*, 50 Wis. 2d 166, 184 N.W.2d 96 (1971); *City of Wauwatosa v. King*, 49 Wis. 2d 398, 182 N.W.2d 530, 42 A.L.R.3d 1341 (1971). *See also* Comment, *Picketers At The Doorstep*, 9 Harv. Civ. Rts. — Civ. Libs. L. Rev. 95 (1974); Note, *Picketing the Homes of Public Officials*, 34 Chic. L. Rev. 106 (1966); Kamin, *Residential Picketing And the First Amendment*, 61 N.W. L. Rev. 177 (1966); Annot., *Peaceful Picketing of Private Residence*, 42 A.L.R.3d 1353 (1972). While the United States Supreme Court has not specifically dealt with a state statute that prohibits all picketing in residential areas, the Court has dealt extensively with picketing in relation to the right of freedom of speech guaranteed by the First and Fourteenth Amendments. In our view, the principles set forth in these Supreme Court decisions are determinative of the free speech issue raised in the case at hand.

In the seminal case of *Thornhill v. Alabama*, 310 U. S. 88, 60 S. Ct. 736, 84 L. Ed. 1093 (1940), the Court held that picketing was a mode of expression and a means of disseminating information that was protected by the freedom of speech guarantee in the First Amendment. The

Court acknowledged, however, the presence of a valid state interest and the permissibility of narrowly drawn statutes to guard against specific dangers. Nevertheless, the Court invalidated the statute which banned all picketing of businesses for the purpose of interfering with business, stating (310 U. S. at 105):

> "The power and the duty of the State to take adequate steps to preserve the peace and to protect the privacy, the lives, and the property of its residents cannot be doubted. But no clear and present danger of destruction of life or property, or invasion of the right of privacy, or breach of the peace can be thought to be inherent in the activities of every person who approaches the premises of an employer and publicizes the facts of a labor dispute involving the latter. We are not now concerned with picketing *en masse* or otherwise conducted which might occasion such imminent and aggravated danger to these interests *as to justify a statute narrowly drawn to cover the precise situation giving rise to the danger....* Section 3448 in question here does not aim specifically at serious encroachments on these interests and does not evidence any such care in balancing these interests against the interest of the community and that of the individual in freedom of discussion on matters of public concern." (Emphasis supplied.)

With respect to the argument that, in applying the statute, the geographical area where the picketing was prohibited would be limited, the Supreme Court said (*id.* at 105-106, 60 S. Ct. at 746):

> "It is not enough to say that Section 3448 is limited or restricted in its application to such activity as takes place at the scene of the labor dispute. '[The] streets are natural and proper places for the dissemination of information and opinion; and one is not to have the exercise of his liberty of expression in appropriate places abridged on the

plea that it may be exercised in some other place.'
Schneider v. State, 308 U.S. 147, 161, 60 S.Ct. 146,
150, 84 L.Ed. 155; Hague v. C.I.O., 307 U.S. 496, 515,
516, 59 S.Ct. 954, 963, 964, 83 L.Ed. 1423."

For other cases invalidating broad restrictions on picketing relating to labor disputes, *see Chauffeurs, Teamsters & Helpers Local Union 795 v. Newell,* 356 U. S. 341, 78 S. Ct. 779, 2 L.Ed.2d 809 (1958); *Cafeteria Union v. Angelos,* 320 U. S. 293, 64 S. Ct. 126, 88 L. Ed. 58 (1943); *Bakery Drivers Local v. Wohl,* 315 U. S. 769, 62 S. Ct. 816, 86 L. Ed. 1178 (1942); *A.F. of L. v. Swing,* 312 U. S. 321, 61 S. Ct. 568, 85 L. Ed. 855 (1941); *Carlson v. California,* 310 U. S. 106, 60 S. Ct. 746, 84 L. Ed. 1104 (1940).

It is true that picketing is not, in the language of the Supreme Court, "pure speech" but rather an activity which intertwines elements of speech and conduct, and it is therefore subject to some regulation, *Shuttlesworth v. Birmingham,* 394 U. S. 147, 152-153, 89 S. Ct. 935, 22 L.Ed.2d 162 (1969). However, the cases clearly hold that attempts at regulation must be narrowly drawn to reach only certain specified conduct which impinges on valid state interests. Consequently, when defendants were convicted for violating a statute prohibiting breach of the peace, and the conduct of the defendants consisted solely of picketing in a peaceful, orderly, non-obstructive manner, the convictions were held to violate the First and Fourteenth Amendments, *Henry v. City of Rock Hill,* 376 U. S. 776, 84 S. Ct. 1042, 12 L.Ed.2d 79 (1964); *Edwards v. South Carolina,* 372 U. S. 229, 83 S. Ct. 680, 9 L.Ed.2d 697 (1963). In both *Henry* and *Edwards,* however, the Court indicated that the result may have been otherwise if the picketing had violated a statute that regulated traffic or a law that reasonably limited hours in which an area was open to the public, *Edwards v. South Carolina, supra,* 372 U. S. at 236, or if the picketing obstructed traffic, involved violence or caused a threat of violence, *Henry v. Rock Hill, supra,* 376 U. S. at 777. *See also Cox v. Louisiana,* 379 U. S. 536, 544-551, 85 S. Ct. 453, 13 L.Ed.2d 471 (1965). Similarly, when the petitioner's members distributed leaflets in a peaceful, orderly manner

and did not precipitate fights, obstruct vehicular or pedestrian traffic or breach the peace, an injunction forbidding them from picketing or handing out their leaflets anywhere within the town limits was held to infringe upon rights protected by the First and Fourteenth Amendments, *Organization For a Better Austin v. Keefe*, 402 U. S. 415, 91 S. Ct. 1575, 29 L.Ed.2d 1 (1971).

On the other hand, statutes that are narrowly drawn to regulate specified conduct involved in certain picketing have been held to be constitutionally permissible. In *Cameron v. Johnson*, 390 U. S. 611, 616, 88 S. Ct. 1335, 20 L.Ed.2d 182 (1968), the Court upheld a statute which prohibited picketing that interfered with free ingress and egress with respect to public facilities, pointing out that "the statute clearly and precisely delineates its reach" and "is 'a precise and narrowly drawn regulatory statute evincing a legislative judgment that certain specific conduct be . . . proscribed.' " Furthermore, picketing that involves trespass on private property is not protected under the First and Fourteenth Amendments. *See Hudgens v. NLRB*, 424 U. S. 507, 96 S. Ct. 1029, 47 L.Ed.2d 196 (1976); *Lloyd Corp. v. Tanner*, 407 U. S. 551, 92 S. Ct. 2219, 33 L.Ed.2d 131 (1972); *see also Adderley v. Florida*, 385 U. S. 39, 87 S. Ct. 242, 17 L.Ed.2d 149 (1966). In the second *Cox v. Louisiana* case, 379 U. S. 559, 85 S. Ct. 476, 13 L.Ed.2d 487 (1965), the Court held valid a statute prohibiting picketing near a courthouse for the purpose of influencing a judicial decision, saying (379 U. S. at 562, 85 S. Ct. at 479):

> "This statute, unlike the two previously considered, is a precise, narrowly drawn regulatory statute which proscribes certain specific behavior. Cf. Edwards v. South Carolina, 372 U.S. 229, 236, 83 S.Ct. 680, 683, 9 L.Ed.2d 697. It prohibits a particular type of conduct, namely, picketing and parading, in a few specified locations, in or near courthouses.

> "There can be no question that a State has a legitimate interest in protecting its judicial system

from the pressures which picketing near a courthouse might create."

In the instant case, the State's principal reliance is on Mr. Justice Black's concurring opinion in *Gregory v. Chicago*, 394 U. S. 111, 89 S. Ct. 946, 22 L.Ed.2d 134 (1969), in which the Court reversed a conviction for disorderly conduct based upon conduct consisting solely of a peaceful and orderly march to the mayor's residence. The State quotes the following passages from Justice Black's concurring opinion:

> "[N]o mandate in our Constitution leaves States and governmental units powerless to pass laws to protect the public from the kind of *boisterous and threatening conduct* that disturbs the tranquility of spots selected by the people either for homes, wherein they can escape the hurly-burly of the outside business and political world, or for public and other buildings that require peace and quiet to carry out their functions, such as courts, libraries, schools, and hospitals." (394 U. S. at 118, emphasis supplied.)

And later:

> "Were the authority of government so trifling as to permit anyone with a complaint to have the vast power to do anything he pleased, wherever he pleased, and whenever he pleased, our customs and our habits of conduct, social, political, economic, ethical, and religious, would all be wiped out, and become no more than relics of a gone but not forgotten past. Churches would be compelled to welcome into their buildings invaders who came but to scoff and jeer; streets and highways and public buildings would cease to be available for the purposes for which they were constructed and dedicated whenever demonstrators and picketers wanted to use them for their own purposes. And perhaps worse than all other changes, homes, the sacred retreat to which families repair for their

privacy and their daily way of living, would have to have their doors thrown open to all who desired to convert the occupants to new views, new morals, and a new way of life. Men and women who hold public office would be compelled, simply because they did hold public office, to lose the comforts and privacy of an unpicketed home. I believe that our Constitution, written for the ages, to endure except as changed in the manner it provides, did not create a government with such monumental weaknesses. Speech and press are, of course, to be free, so that public matters can be discussed with impunity. But picketing and demonstrating can be regulated like other conduct of men. I believe that the homes of men, sometimes the last citadel of the tired, the weary, and the sick, can be protected by government from *noisy, marching, tramping, threatening picketers and demonstrators* bent on filling the minds of men, women, and children with fears of the unknown." (394 U. S. at 125-126, emphasis supplied.)

The State, relying on Justice Black's language with respect to the right of privacy to be enjoyed in one's home, argues that the need to protect this right is sufficient to restrict all picketing in residential neighborhoods. The State, however, overlooks the qualified nature of the above-quoted remarks. The concern focused upon by Justice Black involves picketing which is "boisterous" and "threatening" or consists of "noisy, marching, tramping, threatening picketers and demonstrators." Such activity is the type of conduct which lends itself to regulation by narrowly drawn statutes aimed at the specific dangers involved. However, that type of activity is not involved in the case at bar and is not the target of Art. 27, § 580A.

In the present case, the defendants' picketing was peaceful and on the public street; they neither obstructed traffic nor became disorderly. It was stipulated that they did not disturb the neighbors other than by engaging in the picketing itself. Moreover, subsection 2 of Art. 27, § 580A,

provides that "[i]t shall be unlawful for any person to engage in picketing before or about the residence or dwelling place of any individual." Rather than prohibiting certain specific conduct associated with picketing and within the purview of the state's power to control, the Maryland act provides for a blanket ban on residential picketing itself. The statute proscribes picketing even if it is peaceful and orderly, is quiet and non-threatening, is on public property, and does not obstruct persons and traffic. The ban applies regardless of the time of day the picketing takes place. While picketing and parading and the use of the streets for such purpose is subject to reasonable time, manner and place regulation, such activity may not be wholly denied, *Shuttlesworth v. Birmingham, supra,* 394 U. S. at 152. Furthermore, "so long as the means are peaceful, the communication need not meet standards of acceptability." *Organization For a Better Austin v. Keefe, supra,* 402 U. S. at 419.

In our view, the conduct of the defendants was protected under the First and Fourteenth Amendments to the Constitution. Subsection 2 of Art. 27, § 580A, is drawn too broadly, and because it encompasses within its scope activity which is constitutionally safeguarded, we believe that the statutory ban on all residential picketing is invalid on its face as violative of the right to freedom of speech guaranteed by the First and Fourteenth Amendments to the Constitution of the United States.

(2)

As an alternate ground for our decision, we hold that subsection 2 of Art. 27, § 580A, when coupled with the exemption provided for labor related picketing in subsection 4 (1) of the statute, denies the right to equal protection of the laws guaranteed by the Fourteenth Amendment.

Subsection 4 of Art. 27, § 580A, provides, in part, that "[n]othing herein shall be deemed to prohibit (1) any picketing or assembly in connection with a labor dispute . . . ." The State "would concede that it [the classification] does involve a question impinging upon a

fundamental right, viz., freedom of speech and assembly . . . [and] hence the present case triggers an analysis of the statute under the 'strict judicial scrutiny' test . . . ." (Petitioner's brief, p. 21.) *See Davidson v. Miller*, 276 Md. 54, 344 A. 2d 422 (1975). However, the State contends that the classification created by subsection 4 (1) meets this test and complies with the Equal Protection Clause of the Fourteenth Amendment as a statutory classification serving "compelling governmental interests." We do not believe that the State's position is tenable in light of recent Supreme Court decisions.

In reviewing an anti-picketing statute with a similar exemption for picketing in connection with a labor dispute, the Supreme Court in *Police Department of Chicago v. Mosley*, 408 U. S. 92, 92 S. Ct. 2286, 33 L.Ed.2d 212 (1972), held that the statute violated the Equal Protection Clause, stating (408 U. S. at 95-96, 92 S. Ct. at 2290):

"The central problem with Chicago's ordinance is that it describes permissible picketing in terms of its subject matter. Peaceful picketing on the subject of a school's labor-management dispute is permitted, but all other peaceful picketing is prohibited. The operative distinction is the message on a picket sign. But, above all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content. . . . To permit the continued building of our politics and culture, and to assure self-fulfillment for each individual, our people are guaranteed the right to express any thought, free from government censorship. The essence of this forbidden censorship is content control. Any restriction on expressive activity because of its content would completely undercut the 'profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open.' New York Times v. Sullivan, *supra,* 376 U. S. [254], at 270, 84 S. Ct. [710], at 721.

"Necessarily, then, under the Equal Protection Clause, not to mention the First Amendment itself, government may not grant the use of a forum to people whose views it finds acceptable, but deny use to those wishing to express less favored or more controversial views. And it may not select which issues are worth discussing or debating in public facilities. There is an 'equality of status in the field of ideas,' and government must afford all points of view an equal opportunity to be heard. Once a forum is opened up to assembly or speaking by some groups, government may not prohibit others from assembling or speaking on the basis of what they intend to say. Selective exclusions from a public forum may not be based on content alone, and may not be justified by reference to content alone."

See also Grayned v. City of Rockford, 408 U. S. 104, 92 S. Ct. 2294, 33 L.Ed.2d 222 (1972); People Acting Through Community Effort v. Doorley, 468 F. 2d 1143 (1st Cir. 1972). We consider these cases dispositive of the issue. Because subsections 2 and 4 (1) create an impermissible distinction between labor picketing and other peaceful picketing, based upon "the message on the picket sign," the subsections clearly deprive persons of the right to equal protection of the laws under the Fourteenth Amendment.

The State further argues that if the classification created by subsections 2 and 4 (1) is invalid under the Equal Protection Clause, we should not on equal protection grounds hold that all of the provisions concerning residential picketing are unconstitutional. Instead, the State asks that we "excise" the exception for picketing in connection with labor disputes, thereby extending the prohibition to encompass all residential picketing. The State relies upon Davidson v. Miller, supra, 276 Md. at 83; Shell Oil Co. v. Supervisor, 276 Md. 36, 48, 343 A. 2d 521 (1975); and Baltimore City v. Stuyvesant Co., 226 Md. 379, 391, 174 A. 2d 153 (1961), all of which set forth the general principles concerning severability of statutes.

It is true that a court, after finding that a statute is invalid in some respect, will separate the valid from the invalid provisions *wherever possible. Davidson v. Miller, supra,* 276 Md. at 83; *Shell Oil Co. v. Supervisor, supra,* 276 Md. at 48. However, it comes down to a question of legislative intent. *Ibid.* Even where particular statutes have contained severability clauses, as did the residential picketing statute, Ch. 773 of the Acts of 1971, and as all Maryland statutes now do by virtue of Code (1957, 1976 Repl. Vol.), Art. 1, § 23, this Court has declined on occasion to separate the valid from the invalid portions, *Police Comm'r v. Siegel, Etc., Inc.,* 223 Md. 110, 133-134, 162 A. 2d 727, *cert. denied,* 364 U. S. 909, 81 S. Ct. 273, 5 L.Ed.2d 225 (1960); *Baltimore v. A. S. Abell Co.,* 218 Md. 273, 290, 145 A. 2d 111 (1958), and cases therein cited. As stated in *Police Comm'r v. Siegel, Etc., supra,* 223 Md. at 134:

> " 'A severability clause does not constitute an absolute or inexorable command; it is merely an aid to interpretation. The test of severability is the effectiveness of an act to carry out, without its invalid portions, the legislative intent in enacting it.' "

A long established principle of statutory construction in determining severability questions, is that where the Legislature enacts a prohibition with an excepted class, and a court finds that the classification is constitutionally infirm, the court will ordinarily not presume that the Legislature would have enacted the prohibition without the exception, thereby extending the prohibition to a class of persons whom the Legislature clearly intended should not be reached. In *Connolly v. Union Sewer Pipe Co.,* 184 U. S. 540, 565, 22 S. Ct. 431, 441, 46 L. Ed. 679 (1902), Mr. Justice Harlan for the Court explained and applied the principle as follows:

> "The 1st section of the act here in question embraces by its terms *all* persons, firms, corporations, or associations of persons who combine their capital, skill, or acts for any of the

purposes specified, while the 9th section declares that the statute shall not apply to agriculturalists or live-stock dealers in respect of their products or stock in hand. If the latter section be eliminated as unconstitutional, then the act, if it stands, will apply to agriculturalists and live-stock dealers. Those classes would in that way be reached and fined, when, evidently, the legislature intended that they should not be regarded as offending against the law even if they did combine their capital, skill, or acts in respect of their products or stock in hand. Looking, then, at all the sections together, we must hold that the legislature would not have entered upon or continued the policy indicated by the statute unless agriculturalists and live-stock dealers were excluded from its operation, and thereby protected from prosecution. The result is that the statute must be regarded as an entirety, and in that view it must be adjudged to be unconstitutional as denying the equal protection of the laws to those within its jurisdiction who are not embraced by the 9th section."

And in *Storck v. Baltimore City*, 101 Md. 476, 486-487, 61 A. 330 (1905), this Court, citing with approval *Connolly v. Union Sewer Pipe Co.*, *supra*, stated:

"It is contended, however, that the affirmative part of section one which contains a general prohibition against the erection of steps beyond the building line should be allowed to stand, and that therefore the relief asked in this case cannot be granted. But we cannot agree to this view. It is impossible to say that the Legislature intended to forbid the erection of steps within the 200 feet limit of existing steps, for it is apparent the intention was to grant that privilege. Hence if we adopt the view of the defendant, this purpose of the Legislature will be thwarted, and persons and classes of property owners who were clearly

intended to be excepted from the provisions of the law will be subjected to its prohibitions. A construction leading to such a result cannot be approved."

See also *Nutwell v. Anne Arundel Co.*, 110 Md. 667, 672-673, 73 A. 710 (1909).

This principle is fully applicable to the present case. The General Assembly clearly intended that those who engage in residential picketing in connection with a labor dispute should not be guilty of a criminal offense. A holding that the residential picketing provisions are severable would extend the statutory prohibition to a class which was intended to be excepted. Nothing in the statute suggests that the Legislature would have intended this result. Consequently, the residential picketing provisions of the act are not severable and are invalid under the Equal Protection Clause.

(3)

In conclusion, therefore, we hold that the prohibitions against residential picketing in Art. 27, § 580A, violate the right to freedom of speech protected by the First and Fourteenth Amendments to the United States Constitution as well as infringe upon the right to equal protection of the laws guaranteed by the Fourteenth Amendment.

> *Judgment of the Circuit Court for Montgomery County affirmed.*
> *Costs to be paid by Montgomery County.*