BOARD OF PUBLIC WORKS OF THE STATE
OF MARYLAND v. BALTIMORE
COUNTY, MARYLAND

[No. 58, September Term, 1980.]

*Decided October 28, 1980.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Robert A. Zarnoch* and *Linda H. Lamone, Assistant Attorneys General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellant.

*Malcolm F. Spicer, Jr., Assistant County Solicitor,* with whom was *Leonard S. Jacobson, County Solicitor,* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court. DAVIDSON, J., concurs in part and dissents in part, and filed an opinion concurring in part and dissenting in part at page 685 *infra.*

We shall here hold that since it is a public general law the provisions of Chapter 889 of the Acts of 1980 (the Act) making it subject to the approval of the voters of Baltimore County are invalid. We shall likewise hold that the invalid provisions are not severable. Thus, we shall affirm that portion of the judgment of the Circuit Court for Baltimore

County which held the provisions for referendum invalid, but reverse the holding that its provisions were severable.

Chapter 889 of the Acts of 1980 authorized the creation of a State debt in the amount of $1,250,000 for the design, planning, construction, etc., of a performing arts center at Oregon Ridge, Baltimore County, to be known as the Oregon Ridge Multi-Performance and Educational Center. This chapter was introduced in the General Assembly as Senate Bill 503. The sum authorized was $2,500,000. The Budget and Taxation Committee of the Senate proposed three amendments which were duly accepted by the General Assembly. The first reduced the authorized sum to $1,250,000. The other two precipitate this litigation. These were added as §§ 5 and 6 of the bill, providing in pertinent part:

> (5) Prior to the payment of any funds under the provisions of this Act ... Baltimore County shall provide at least an equal and matching fund of $1,250,000 for this project. ... If satisfactory evidence of the raising of at least an equal and matching fund for this project is not presented to the Board of Public Works on or before June 1, 1982, the proceeds of the loan shall be transferred to the Annuity Bond Fund and applied to the debt service requirements of the State.

> (6) The payment of any funds under the provisions of this Act ... is further contingent on the approval of this project by a referendum of the legally qualified voters of Baltimore County at the general election to be held in November of 1980. ...

Citing *Steimel v. Board,* 278 Md. 1, 357 A.2d 386 (1976), and *Cole v. Secretary of State,* 249 Md. 425, 240 A.2d 272 (1968), the Attorney General advised the Governor he could not "approve the bill for constitutionality." The bill was signed by the Governor six days later. However, a few days later on June 18, 1980, the Board of Public Works passed a resolution stating that upon the advice of the Attorney Gen-

eral it would take no action to implement the Act "until the questions raised by the Attorney General are judicially resolved in favor of the legislation." In the interim Baltimore County had enacted an ordinance authorizing a county debt not exceeding $1,250,000 for the purpose of funding the Oregon Ridge Center contingent upon the approval of its people at the general election of 1980. Baltimore County Charter § 718 requires that bond bills be submitted to referendum.

Baltimore County filed a petition for declaratory judgment in the Circuit Court for Baltimore County against the Governor, the Comptroller, and the Treasurer, constituting the Board of Public Works. It sought a declaration that Chapter 889 is valid and constitutional. The trial court struck down so much of the Act as required the approval of the voters of Baltimore County but held that provision severable so that the balance of the Act might be enforced. Both parties appealed to the Court of Special Appeals. We granted the writ of certiorari prior to hearing in that court.

Since at least the time of *Hammond v. Haines,* 25 Md. 541, 562 (1866), the law of this State has been that a public general law may not be submitted by the General Assembly to referendum of the people either on a statewide level, *Brawner v. Supervisors,* 141 Md. 586, 595, 119 A. 250 (1922), or in one county or the City of Baltimore, *Levering v. Supervisors of Elections,* 137 Md. 281, 289, 112 A. 301 (1920), even though a public local law may be conditioned upon a referendum of the voters in the area or political subdivision affected by the legislation. *Steimel,* 278 Md. at 4-5; *Cole* at 434; and, as to the latter proposition, *Steuart Petroleum Co. v. Board,* 276 Md. 435, 446, 347 A.2d 854 (1975); *Ness v. Baltimore,* 162 Md. 529, 537, 160 A. 8 (1932); and *Bradshaw v. Lankford,* 73 Md. 428, 430-31, 21 A. 66 (1891). The reasons for this holding were explained by Judge Offutt for the Court in *Brawner:*

> [W]e rest our conclusion upon two grounds, one, that the people of Maryland, having delegated to the Legislature of Maryland the power of making its laws, that body could not legally or validly

redelegate the power and the authority thus conferred upon it to the people themselves; and two, that the people of the State, from whom the Legislature itself derives its powers, having prescribed in the Constitution of the State the manner in which its laws shall be enacted, it is not competent for the Legislature to prescribe any other or different way in which its laws may be enacted. [*Id.* 141 Md. at 595.]

In this case the County concedes that the Act is a public general law. Indeed, it is such a law since it provides for the levy and imposition of "an annual State tax on all assessable property in the State in rate and amount sufficient to pay the principal of and interest on the bonds" issued thereunder. However, the County points out that by its terms the Act takes effect June 1, 1980, that issuance of the bonds is not made contingent upon the referendum, and that the Act provides that if the County has not raised the matching sum by June 1, 1982, "the proceeds of the loan shall be transferred to the Annuity Bond Fund and applied to the debt service requirements of the State." From this it argues that "the legislature's power to make law has not been delegated to the people of Baltimore County as their vote is not a vote on the law but merely a vote for or against the project and the County's bond issue . . . ."

The Act authorizes the expenditure of State funds. Under Maryland Constitution Art. III, § 32 no money may be drawn from the Treasury of this State "except in accordance with an appropriation by Law . . . ." The Act amounts to a "Supplementary Appropriation Bill" under Constitution Art. III, § 52 (8). The money is not to be spent for its obviously intended purpose unless the people of Baltimore County approve. In our view this amounts to submission of a public general law to the approval of the people of a single county. Thus, this provision of the Act is invalid.

Maryland Code (1957, 1976 Repl. Vol.) Art. 1, § 23 provides:

The provisions of all statutes enacted after July 1,

1973 are severable unless the statute specifically provides that its provisions are not severable. The finding by a court that some provision of a statute is unconstitutional and void does not affect the validity of the remaining portions of that statute, unless the court finds that the remaining valid provisions alone are incomplete and incapable of being executed in accordance with the legislative intent.

A number of our prior cases have discussed severability. See, e.g., *O. C. Taxpayers v. Ocean City,* 280 Md. 585, 601, 375 A.2d 541 (1977); *State v. Schuller,* 280 Md. 305, 318-21, 372 A.2d 1076 (1977); *Davidson v. Miller,* 276 Md. 54, 83, 344 A.2d 422 (1975); *Shell Oil Co. v. Supervisor,* 276 Md. 36, 48-49, 343 A.2d 521 (1975); *Anne Arundel County v. Moushabek,* 269 Md. 419, 428, 429, 306 A.2d 517 (1973); *Sanza v. Md. Board of Censors,* 245 Md. 319, 338-39, 226 A.2d 317 (1967); and *Baltimore v. A. S. Abell Co.,* 218 Md. 273, 290, 145 A.2d 111 (1958). However, as Judge Eldridge observed for the Court in *Schuller,* "[I]t comes down to a question of legislative intent." 280 Md. at 319. In *Sanza,* Judge Oppenheimer said for the Court:

> The presence of a severability clause raises a presumption of severability, but the clause is merely declaratory of an established rule of construction; it is "an aid merely, not an inexorable command." The test is, would the legislative body have enacted the statute or ordinance if it knew that part of the enactment was invalid? *City of Baltimore v. Stuyvesant Ins. Co.,* 226 Md. 379, 390, 391, 174 A.2d 153 (1961); *City of Baltimore v. A. S. Abell Co.,* 218 Md. 273, 289-91, 145 A.2d 111 (1958), and cases therein cited. [*Id.* 245 Md. at 338.]

In *A. S. Abell Co.* Judge Prescott stated for the Court that "a saving clause will not be given effect where ... invalid provisions affect the dominant aim of the whole statute." 218 Md. at 290. In *Davidson* Judge Digges made the point for the

Court that "even though constitutional and unconstitutional provisions of a law are contained in the same section, the entire section or enactment is not invalid unless the provisions are essentially and inseparably connected in substance . . . ." *Id.* 276 Md. at 83.

Baltimore County points to its standard practice of funding capital projects by bond issues, notes that under its charter such bond issues are subject to approval of the people, and says that the General Assembly would have been aware of this. From these facts it argues that the Legislature would indeed have passed the Act without the offending referendum provision. It seems to us that a probable reason for that which was done by the General Assembly was the fact that it was cognizant that the County *could* elect to provide the necessary funds out of general revenues which action would *not* require approval by the people. For that reason in its legislative wisdom it saw fit to amend the proposal to specifically require that payment of funds under the Act was "contingent on the approval of this project by a referendum of the legally qualified voters of Baltimore County . . . ." It was taking no chances. It wanted to be certain that the project had the approval of the people of Baltimore County before the General Assembly obligated all of the taxpayers of this State to pay for this public improvement to be located in Baltimore County. To adopt the County's position would be to conclude that the General Assembly with knowledge that the people would evince their approval or disapproval of the project by voting on the bond issue nevertheless required a redundant vote on the Act. This legislative history convinces us that the General Assembly would not have enacted the measure in question without the invalid provision.

In addition, even if the actual intention of the Legislature were to sever, nevertheless we would not make a finding of severability under the circumstances here. This is not a case where there are parts of the statute which are independent of the unconstitutional provision. Rather, the effectiveness of the entire statute is made dependent upon an unconstitutional referendum. Consequently, the invalidity

is so fundamental that such a statute is not susceptible of severability.

> *Judgment of the Circuit Court for Baltimore County vacated and case remanded to that court for entry of a declaratory judgment in accordance with this opinion; costs to be equally divided between the parties; mandate shall issue forthwith.*

*Davidson, J., concurring in part and dissenting in part:*

While I agree with the majority that the referendum provision is invalid, I believe that it is properly severable.