## EDWARD J. STORCK *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE ET AL.

*Invalidity of Statute Prohibiting Erection of Steps, Etc., Beyond the Building Line of Streets Outside of the Burned District in Baltimore City—Unreasonable Classification of Property Owners—Proviso in Statute—When Invalidity of Part of Statute Renders the Whole Invalid.*

The Act of 1904, ch. 616, entitled an Act to prevent the obstruction of the sidewalks of the streets of Baltimore City, re-enacted secs. 6 and 8 of the City Charter. The first section of the Act authorizes the city to regulate the limits within which steps, bay windows, etc., may be erected over the building line; then the Act prohibits the city from granting permits for any such erections, including steps, at any point between the grade of the sidewalk and a point ten feet above the grade, "provided that *outside which* such erections shall lawfully exist * * at the time of the passage of this Act other such erections of the same kind may be permitted." The section concludes: "Provided that no such erections, etc., shall in any case be permitted unless there shall lawfully exist at the time of the passage of this Act, on the same side of such street, etc., such an erection upon the same block at a point within 200 feet of that at which it is proposed to make another such erection." *Held,*

1st. That the words "outside which" in the first proviso cannot be construed to mean outside the burned district, because that district had not been referred to in any previous part of the Act, although it is defined by metes and bounds in a subsequent part. It cannot therefore be held that the Act related only to the erection of steps beyond the building line within the burned district.

2nd. That inasmuch as the words "outside which" are without meaning the proviso in which they occur is void.

*Held,* further, that if the second proviso be construed as independent of the first, and as authorizing the erection of steps beyond the building line in the parts of the city outside of the burned district, but only within 200 feet from such steps lawfully existing at the time of the passage of the Act, then the statute makes two classes of property owners —*first,* those who own unimproved lots situated within 200 feet of a house in the same block which then had steps projecting beyond the building line, aad *second,* those whose lots are situated more than 200 feet distant from a house with steps thus built over the building line. The former are allowed to obtain permits to erect steps beyond the building line while this right is denied to the latter. *Held,* that this

classification of property owners is arbitrary and unreasonable, and the second proviso of the Act is consequently void so far as it applies to streets outside of the burned district.

*Held*, further, that the affirmative part of the Act which contains a general prohibition of the erection of steps beyond the building line cannot be allowed to stand while the two provisos are declared to be void, because it was the obvious intention of the Legislature that certain classes of property owners should be exempt from the prohibition.

When a part of a statute is held to be void then the entire statute must be held to be inoperative if its enforcement without the void part would effect results not within the legislative purpose.

It is competent for the Legislature to prohibit certain obstructions of the streets within the central, business part of a city and to allow such obstructions within the residential district, because it is a natural and reasonable classification of property owners in respect to the subject matter.

Appeal from the Circuit Court of Baltimore City (HARLAN, C. J.)

The cause was argued before McSHERRY, C. J., FOWLER, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Edgar H. Gans*, for the appellant.

*Edgar Allan Poe, Deputy City Solicitor*, (with whom was *W. Cabell Bruce, City Solicitor*, on the brief), for the appellees.

FOWLER, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court of Baltimore City.

Edward J. Storck, the owner of a lot of ground on Patuxent street in that city, desiring to improve it by building thereon a number of dwelling houses, made application in due form of law for a building permit, which was granted. Subsequently he applied to the Board of Estimates for a permit to put front steps to these houses extending out on the sidewalk beyond the building line. It appears from the minutes of the proceedings of the board that it was willing to grant this permit for the erection of steps, but it declined to do so solely on the ground that it was prohibited by the Act of 1904,

ch. 616. Whereupon Mr. Storck filed the bill in this case asking for an injunction to restrain the city from obstructing or in any way interfering with the construction and erection by him or his employees of the steps in question. It was alleged in the bill, among other things that the Board of Estimates have the right to grant him the privilege of building the said steps in accordance with his application therefor, notwithstanding the Act of 1904, ch. 616; that said Act does not repeal the Act of 1900, ch. 109, under which said board has such authority; that said Act of 1904, ch. 616, is invalid, because its meaning cannot be ascertained under any of the rules of construction known to the law, and that it is, therefore, too uncertain to be enforced; that said Act of 1904, ch. 616, if it can be construed in the way claimed by the city authorities, is unconstitutional and void, as it deprives the plaintiff of his property without due process of law, and denies to him the equal protection of the laws. The defendants demurred to the whole bill, the Court below passed a decree sustaining this demurrer and dismissing the bill. From this decree the plaintiff has appealed, and the only question involved is whether the Act of 1904, ch. 616, is a valid exercise of legislative power. On the part of the plaintiff it is contended this Act is invalid for two reasons, first, its meaning is too uncertain to be enforced; and second, if sufficiently certain it deprives the plaintiff and all others in like situation, of the equal protection of the laws. The contention of the defendants is just the reverse, namely that the Act in question is free from any fatal uncertainty and that it in no way deprives the appellant of his constitutional rights. In addition to this contention, however, the defendant urges that even if it should be held that a portion of the Act is void, the remainder thereof is valid, and the plaintiff, by its terms, is not entitled to the privilege asked for.

It may be said at the outset that.it is conceded that the plaintiff, but for the Act of 1904, ch. 616, had done everything required to entitle him to the permit to erect steps as set forth in his application, and hence we may at once proceed to the

consideration of the Act which has given rise to this contro-
versy.   It is entitled "An Act to prevent the obstruction of
the sidewalks of the streets   *   *   *   of Baltimore City"
and for that purpose it repeals and re-enacts sections 6 and 8
of the City Charter.   As section one alone relates to steps we
will direct our attention to that section without referring to
the other parts of the Act.   Upon an examination of section
one of the Act we find that it re-enacts section 6 of the City
Charter in *totidem verbis* down to the sentence beginning "To
regulate the limits" as found in the fourth line from the end
of the old section.   The amended section then reads:  "To reg-
ulate (subject to the restrictions hereinafter set forth) the limits
within which it shall be lawful to erect any steps, porticos,
bay windows, show windows, signs, columns, piers or other
projections or structural ornaments of any character for the
houses fronting on any of the streets, lanes, &c., of said city,
but no such regulation shall permit any such erection at any
point between the grade of the sidewalk of any such street,
&c., and a point ten feet above such grade; provided, that out-
side which such erections or any of them shall lawfully exist
between the grade of the sidewalk and a point ten feet above
such grade at the time of the passage of this Act, other such
erections of the same kind as those hereinbefore specified, may
be permitted, under such regulations as the said Mayor and
City Council, &c., may from time to time prescribe.   The
burned district within the meaning of this section shall be the
territory comprised within the following metes and bounds."
Then  follows  the  description  of the "Burned  District."
"Block" is then defined to mean, as used in this section, "the
portion of one side of any street, &c., included between the
nearest two cross streets."   And finally the section ends with
this proviso "provided that no such erections between the
grade of the sidewalk and a point ten feet above thereof shall
in any case be permitted, unless there shall lawfully exist at
the time of the passage of this Act, on the same side of such
street, &c., such an erection upon or on the said block, at a
point within two hundred feet of that at which it is proposed
to make another such erection."

It will thus be seen that the part of section 1 of the Act un-
der consideration, namely, that portion of the section which
relates to *steps* and certain other erections particularly referred
to, confers upon the city the power to regulate the *limits* within
which it shall be lawful to erect steps for houses fronting on
any of its streets.    Immediately following this general and
sweeping power the city is absolutely prohibited from grant-
ing permits for any *such erections*, including *steps*, at any point
between the grade of the sidewalk and a point ten feet above
such grade.    Of course this prohibition, necessarily includes
steps—and if there were nothing else, it would be clear that
the Act prohibits the erection in the city of Baltimore of any
more steps outside the building line for they, must of neces-
sity; rest on the sidewalk and therefore be below the ten-foot
point.    But following the language just referred to we are
confronted with the first proviso; that "outside which," steps,
bay windows, &c., may lawfully exist between the grade of the
widewalk and the ten-foot point, at the time the Act was
passed, other such erections including steps may be permitted
under regulations prescribed by the city.

In the first place it may be conceded that if this proviso had
been enacted as suggested by the learned counsel for the city
no difficulty, so far as this proviso is concerned, could have
existed, for his contention is that the object of the Legislature
was to prohibit absolutely the erection of steps, &c., beyond
the building line anywhere within the "Burned District" which
is particularly described in the Act by metes and bounds, and
to allow such erections outside of that District under such
regulations as the city should prescribe.    If we could adopt
this view the proviso would then read; provided that outside
of the "burned district" where any such erections shall law-
fully at the time of the passage of this Act, other such erec-
tions may be permitted under regulations, &c.    There could
be, we think, no valid objection to *this proviso* if it had been
enacted in this revised form.    And while we have no doubt
this was the form, substantially, in which the Act was drawn
by its learned author and submitted to the Legislature, yet we

must be guided solely by the language found in the Act, and from it, if possible, discover the intention of the lawmaking power. Before proceeding further, perhaps we should say we cannot agree with the contention of the plaintiff that under this Act the city has power to regulate *only* the limits of the sidewalks within which steps may be erected. In our opinion when this language is used in sec. 1 of Act 1904, viz: "To regulate (subject to the restrictions hereinafter set forth) *the* limits within which it shall be lawful to erect any steps," &c., the Legislature referred to the limits of the city and not to the limits of the sidewalk. But that question is not material now in the view we have been forced to adopt.

What then is the meaning of the words "outside which" as used in the section under consideration? No attempt was made by counsel to define these words themselves, but it is contended, as we have seen, that they should be understood to mean "outside the burned district." But there is no justification for this interpolation. The "Burned District" had not been mentioned in the previous part of the Act. So far as the Act itself is concerned it might with equal propriety be suggested that the words "South Baltimore," or "Old Town" ought to be inserted after the words "outside which." It is true the section contains a definition of "Burned District" following the proviso—and so also the same section embraces a definition of the word "Block." If the mere fact of being defined justifies the use of the words "Burned District"—the word "Block" is equally entitled to consideration. But it is apparent this addition to the text of the Act would "make confusion worse confounded." If that portion of the section of the Act immediately preceding this *proviso* had in terms applied to a defined and limited area of the city, then it would have to be conceded that the words "outside which" would necessarily have applied to such area, but, as we have seen there is no such limitation; and it cannot be said, we think, that it is the duty of this Court to supply in this case what the Legislature has omitted. There are, we have often said, cases in which the Court will, perhaps, add to or take away

certain words from a statute in order to effectuate the clear intention of the Legislature.    Thus in the case of *Waters* v. *Laurel*, 93 Md. 221, cited by the defendant, the words "Town of Laurel" omitted in the first section were supplied by the Court.    But that was a very different case from this.    The title of the Act is: "An Act to authorize and empower the Mayor and City Council of Laurel to borrow money, &c.," and the first section provided that for the purpose of supplying water to the town the "Mayor and City Council" were authorized to borrow money.    The question was, which Mayor and City Council?    The plain answer was, the Mayor and City Council mentioned in the title and in every other section of the Act, except in the first.    Indeed it is difficult to understand how any serious objection can be based upon such an omission as was relied on in the case just cited, for the section alleged to have been incomplete was quite as intelligible before as after the desired interpolation was made.    But looking to the title of the Act of 1904, ch. 616, now before us we fail to find in its title any reference whatever to the "Burned District."    Nor indeed are those words used anywhere in the affirmative provisions of the Act, but only where what is known as the Burned District is described or defined.    In addition to this, however, we are asked not only to put into the body of the Act these words after the expression "outside" but to eliminate the pronoun "which" and substitute therefor the adverb "where."    We do not feel justified under any recognized rule of construction in taking such liberties with an Act passed by the Legislature; and inasmuch as the words "outside which" standing by themselves are concededly meaningless our conclusion is that the proviso in which they occur is void.    *Tag* v. *State,* 100 Md. 588; *Campbell's case,* 2 Bland, 209.

What we have said in regard to the first proviso might, perhaps, be sufficient to dispose of the case upon the theory that the second proviso being an essential part of the first must necessarily fall with it under the rule announced in *State* v. *Bensinger*, 83 Md. 488.

2. But, inasmuch as the validity *vel non* of the second proviso was fully discussed, we will consider the questions presented by this branch of the case.

We have already transcribed it.   Its place in the section is so far removed from the first proviso that it is somewhat difficult to see the connection between the two.   However assuming *ex gratia* that the law as properly construed prohibits steps from being erected in the "Burned District;" allows them to be erected outside that district in places where they have lawfully existed before the passage of the Act; but not within 200 feet from such steps existing at that time, it is contended by the plaintiff that such construction would make the law unconstitutional as involving an arbitrary discrimination between property holders which would deprive the plaintiff and all others in a like situation, of the equal protection of laws.

The case is before us on demurrer to the bill and, therefore, the facts properly pleaded therein are to be taken as true.   In order to present the question now to be considered it will not however, be necessary to rehearse all of the allegations of the bill.   It is sufficient to say that among other things it is alleged in the 9th paragraph that all through the residential portions of the city, the dwellings almost invariably have steps projecting from the front of the buildings upon the sidewalk; that when a block is not built up entirely, there are such steps in front of such dwellings as are built; that there are blocks where two hundred feet counted in each direction from steps existing when the law of 1904 was passed, would include the whole block; and there are blocks where such 200 feet would not include the whole block.   So that if the law of 1904 operates, some city blocks could be entirely improved with front steps projecting from the front of the buildings, some could be only partly improved, and some, namely, those on which there were no steps at the time of the passage of the Act of 1904, could not be so improved at all.

There was no attempt at bar to base the invalidity of the law upon the ground that, according to the construction contended for by the defendant, the erection of steps on the side-

walk was absolutely prohibited in the Burned District. On the
contrary it was conceded that it is entirely competent for the
Legislature so to do, and that a discrimination between the
crowded, central business part of the city, and the residential
sections thereof is "a rational discrimination founded in the
nature of things and calculated to prevent the obstruction
of the streets," which, according to the title, is the main
object of the Act.

But it is the operation of the Act, and especially the second
proviso thereof, outside of the Burned District which gives
rise to the particular objection we are now considering,
namely, what right has the Legislature to give to one class of
property owners the privilege of erecting steps on the side-
walk, and to deny the same privilege to another class? It is
settled beyond dispute this cannot be done arbitrarily. The
classification must be natural and not arbitrary. "Arbitrary
selection can never be justified by calling it classification. The
equal protection demanded by the Fourteenth Amendment
forbids this." *Rail Road* v. *Ellis* 165 U. S. 155. And in ac-
cordance with this settled rule so long maintained by the
United States Supreme Court we have held, among other
cases, in *Luman* v. *Hitchens Bros.*, 90 Md. 25, that "whilst
the Legislature may, under conditions, create classes and sub-
ject all persons, coming within the classifications to burdens
and duties not imposed upon individuals outside of the classes,
these classifications must not be arbitrary or unreasonable, but
must rest upon some difference which bears a reasonable and
just relation to the act in respect to which classification is
proposed." What is the act with respect to which this law
makes the classification objected to by the plaintiff? The answer
to this question is found in the title and the law itself, namely,
the obstruction of the streets. The purpose of the Act of
1904 was to prevent such obstruction, and hence the proposed
classification must be reasonable, natural and not arbitrary; and
must have a reasonable and just relation to that subject.

It will be observed that the Act, as we are assuming it is to
be construed, divides the property owners outside the Burned

District into two classes—those who may be permitted by the city to build steps beyond the building line on the sidewalk, and those who are absolutely prohibited from so doing. The basis of this classification is found in the second proviso to the effect that no steps shall be built beyond the building line unless there shall lawfully exist at the time of the passage of the Act of 1904, on the same side of the street, such steps "upon or on the said block at a point within 200 feet of the point at which it is proposed to make another such erection."

As we have said it is not disputed that the Legislature may prohibit the erection of steps in *certain localities* provided there is some reasonable ground for such prohibition, but it is difficult to understand upon what theory it was determined to adopt the distance of 200 feet from existing steps as a limit within which other steps may be erected and beyond which property owners are deprived of this valuable privilege. But this question is so well discussed in the brief of the learned counsel for the plaintiff that we will quote what he says upon this subject :

"But in this case we have three classes, all of them in the outskirts of the city where travel is light and all practically in precisely the same position so far as obstruction of the pavement is concerned, and yet differences are made by the law.

(1) The class where steps exist somewhere near the centre of the block. In this case the pavements on that side of the street are entirely unobstructed, except as to one or two houses on the block. If there is any reason for prohibiting steps in such a locality it exists in such a block just as fully and completely as in a block which has one house built on the corner, or on a block where as yet there are no buildings at all. Yet, in this first class, the whole block may be improved by dwellings having steps projecting on the pavement. For what reason? Simply because if you measure from the existing steps either way for two hundred feet you will come to the end of the block.

(2) The class where a dwelling is built on the corner. In this case the block may be improved with dwellings with steps

to the extent of two hundred feet from the corner house. But all the rest of the block cannot have dwellings with steps. Why 200 feet? Why give the owner of a lot just 200 feet from the corner house a right to have steps, when his next door neighbor in the same block shall not have the right? Will not one pair of steps obstruct the street as much as the other? What just and reasonable relation to obstruction of the streets is found in the length of 200 feet? Why not 100 feet, or 300 feet?

(3) The class where no dwellings are built on a block. In this class the owner is prohibited from building steps at all. His steps would be no more of an obstruction than those allowed in the first two classes. His neighborhood is about the same. The amount and kind of travel is the same, and yet he is deprived of a privilege very valuable to him, whilst his neighbor in the next block secures the privilege from the accident of being within 200 feet of existing steps."

Having already said that in our opinion the first proviso is void for uncertainty, and being of opinion that the second is also void because of the arbitrary and unreasonable classification attempted therein the law must be declared inoperative and void so far as it applies to obstructions of the streets outside the Burned District. Within that District it is conceded by both sides that the law should be allowed to operate because it was the intention of the Legislature to prohibit absolutely all obstructions within that congested portion of the city. Bnt that question is not now before us.

3. It is contended, however, that the affirmative part of section one which contains a general prohibition against the erection of steps beyond the building line should be allowed to stand, and that therefore the relief asked in this case cannot be granted. But we cannot agree to this view. It is impossible to say that the Legislature intended to forbid the erection of steps within the 200 feet limit of existing steps, for it is apparent the intention was to grant that privilege. Hence if we adopt the view of the defendant, this purpose of the Legislature will be thwarted, and persons and classes of property

owners who were clearly intended to be excepted from the
provisions of the law will be subjected to its prohibitions.   A
construction leading to such a result cannot be approved.   It
was held by the Supreme Court of the United States in the
case of *Connelly* v. *Union Sewer Pipe Co.*, 184 U. S. 540, that
section 9 of the Illinois Trust Act was void because that sec-
tion exempted agriculturalists and live stock dealers from the
penalties imposed for certain prohibited combinations in re-
straint of trade, and that if the law without the bad section
were held good the classes of persons therein mentioned would
· be subjected to a liability which was not intended to impose
on them.   Hence the whole law was declared invalid.   JUDGE
HARLAN said:   "If different sections of a statute are inde-
pendent of each other, that which is unconstitutional may be
disregarded and valid sections may stand and be enforced.
But if an obnoxious section is of such import that the other
sections without it *would cause results not contemplated or de-
sired by the Legislature*, then the entire statute must be held
inoperative."   And to the same effect we have held in *State*
v. *Benzinger*, 83 Md. 481; *Stiefel's case*, 61 Md. 144.

It follows, therefore, from what we have said that our con-
clusion is that the Act of 1904, ch. 616, amending the Charter
of Baltimore City is void in so far as it applies to the portion
of the city outside the Burned District.

*Decree reversed with costs and cause
remanded.*

(Decided June 22nd, 1905,)