## JOHN W. WHEELER *v.* STATE OF MARYLAND

[No. 66, September Term, 1977.]

*Decided December 12, 1977.*

594

*Motion for reconsideration filed January 11, 1978; denied January 20, 1978.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Burton W. Sandler* for appellant.

*Bruce C. Spizler, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court. MURPHY, C. J., and LEVINE, J., dissent and MURPHY, C. J., filed a dissenting opinion in which LEVINE, J., concurs at page 609 *infra.*

We hold that §§ 417 (2) and 418 of Maryland's Obscene Matter Act, Maryland Code (1957, 1976 Repl. Vol.) Art. 27, are unconstitutional on the ground that these sections violate the equal protection clause of the Fourteenth Amendment.

John W. Wheeler was convicted by a jury in the Criminal Court of Baltimore of distributing an obscene magazine in violation of § 418 of the Obscene Matter statute. He was punished by a fine of $500 and ordered to pay the costs. The Court of Special Appeals affirmed the judgment, *Wheeler v. State,* 35 Md. App. 372, 370 A. 2d 602 (1977), and we granted a petition for a writ of certiorari. We reverse.

## I

By Acts 1967, ch. 394, § 1, the General Assembly repealed §§ 417, 418 and 418B through 425 of Art. 27 of the Maryland Code of 1957, title "Crimes and Punishments," subtitle "Obscene and Other Objectionable Publications," and enacted in lieu thereof new §§ 417, 418, and 419 through 425 under the subtitle "Obscene Matter." Section 418 proscribes the crime of which Wheeler was convicted. It appears in the 1976 Replacement Volume as originally enacted:

> "Every person who knowingly sends or causes to be sent, or brings or causes to be brought, into this State for sale or distribution, or in this State prepares, publishes, prints, exhibits, distributes, or offers to distribute, or has in his possession with intent to distribute or to exhibit or offer to distribute, any obscene matter is guilty of a misdemeanor."

"Person" is defined in § 417 (2):

> " '*Person*' means any individual, partnership, firm, association, corporation, or other legal entity, but shall not be construed to include an employee of any individual, partnership, firm, association,

corporation, or other legal entity operating a theatre which shows motion pictures if the employee is not an officer thereof or has no financial interest therein other than receiving salary and wages." [1]

## II

The cardinal rule of statutory construction is to ascertain and carry out the real legislative intention. *Balto. Gas & Elect. Co. v. Board,* 278 Md. 26, 31, 358 A. 2d 241 (1976). A statute should be construed according to the ordinary and natural import of the language used without resorting to subtle or forced interpretations for the purpose of limiting or extending its operation. *Burch v. State,* 278 Md. 426, 429, 365 A. 2d 577 (1976); *Cearfoss v. State,* 42 Md. 403, 407 (1875). That is, we must confine ourselves to the statute as written, and may not attempt, under the guise of construction, to supply omissions or remedy possible defects in the statute. *In Re Appeals Nos. 1022 & 1081,* 278 Md. 174, 178, 359 A. 2d 556 (1976). Thus, if there is no ambiguity or obscurity in the language of a statute, there is usually no need to look elsewhere to ascertain the intent of the Legislature. *Maryland Auto Ins. Fund v. Stith,* 277 Md. 595, 597, 356 A. 2d 272 (1976). As we said in *Purifoy v. Merc.-Safe Dep. & Trust,* 273 Md. 58, 66, 327 A. 2d 483 (1974), "where statutory language is plain and free from ambiguity and expresses a definite and sensible meaning, courts are not at liberty to disregard the natural import of words with a view toward making the statute express an intention which is different from its plain meaning." All parts of a statute are to be read together to find the intention as to any one part, and all parts are to be reconciled and harmonized if possible. *Thomas v. State,* 277 Md. 314, 317, 353 A. 2d 256 (1976). *See Harden v. Mass Transit Adm.,* 277 Md. 399, 406-407, 354 A. 2d 817 (1976). Our most recent pronouncement on the matter appears in *Coleman v. State,* 281 Md. 538, 546, 380 A. 2d 49 (1977):

"It is elementary that a statute should be construed according to the ordinary and natural

---

1. The exemption was not in the 1967 Act. It was added by Acts 1968, ch. 619.

import of the language used unless a different meaning is clearly indicated by its context, without resorting to subtle or forced interpretations for the purpose of extending or limiting its operation. *State v. Fabritz,* 276 Md. 416, 348 A. 2d 275 (1975) [*cert. denied,* 425 U. S. 942 (1976)]; *Slate v. Zitomer,* 275 Md. 534, 341 A. 2d 789 (1975) [*cert. denied sub nom. Gasperich v. Church,* 423 U. S. 1076 (1976)]. In other words, a court may not as a general rule surmise a legislative intention contrary to the plain language of a statute or insert exceptions not made by the legislature. *St. Paul Fire & Mar. v. Ins. Comm'r,* 275 Md. 130, 339 A. 2d 291 (1975); *Amalgamated Ins. v. Helms,* 239 Md. 529, 212 A. 2d 311 (1965)."

We pointed out that in *Birmingham v. Board,* 249 Md. 443, 239 A. 2d 923 (1968), where it was evident that words were inadvertently omitted from a statute, the effect of which was to render the statute unconstitutional on its face, we held that "since the [Court] could not invade the function of the legislature, it had no power to correct an omission in the language of a statute even though it appeared to be the obvious result of inadvertence." *Coleman* at 547. And we repeated what we said in "the oft-cited case" of *Schmeizl v. Schmeizl,* 186 Md. 371, 375, 46 A. 2d 619 (1946), that " 'the doctrine giving the judge power to mould the statute in accordance with his notions of justice has no place in our law.' " *Coleman* at 547. In short, judicial preference may not be put before legislative intent.

Furthermore, penal statutes are to be strictly construed. *Howell v. State,* 278 Md. 389, 392, 364 A. 2d 797 (1976). This was succinctly put over a century ago in *Cearfoss v. State, supra,* and holds fast today:

"No man incurs a penalty unless the act which subjects him to it, is clearly, both within the spirit and letter of the statute. Things which do not come within the words are not to be brought within them by construction. The law does not allow of

constructive offenses or of arbitrary punishment."
*Id.* 42 Md. at 407.

Reading § 418 together with § 417 (2) in light of these well known and oft repeated principles, we find no ambiguity or obscurity in the language of the statute, so there is no need to look elsewhere to ascertain the intent of the Legislature. The legislative purpose is clear — to deter the dissemination of obscene matter by making designated acts a crime punishable by imprisonment and fine. The all encompassing application of the prohibitions to any individual and every other legal entity, plainly the original intention, was limited by the 1968 amendment. By that amendment the plain intention was to exempt from criminal responsibility for the proscribed conduct employees of any individual and every other legal entity "operating a theatre which shows motion pictures," unless the employee is an officer thereof or has a financial interest therein other than receiving salary and wages. The word "employee" and the phrase "operating a theatre which shows motion pictures" must be construed according to their ordinary and natural meaning, for there is no indication that the Legislature intended to use them in an abnormal sense. *Blue Cross v. Franklin Sq. Hosp.,* 277 Md. 93, 105, 352 A. 2d 798 (1976). According to Webster's Third New International Dictionary of the English Language (unabridged 1968), an "employee" is "one employed by another usually in a position below the executive level and usually for wages." If a person is so employed by a legal entity operating a theatre showing motion pictures and is not an officer thereof and has no financial interest therein, he is within the ambit of the exemption and without the proscriptions of the statute. He may, under the clear and unambiguous statutory provisions, with impunity, engage in the conduct § 418 prohibits. We are not at liberty to bring about a different result by inserting or omitting words to make the statute express an intention not evidenced in its original form. The word "employee" may not be limited beyond the limitations set out in the statute. It may not be construed, for example, to mean only the film projectionist. It must include the theatre manager, ticket sellers, ushers,

refreshment stand salespersons, restroom attendants and all other persons meeting the exemption criteria while acting in the course of their employment. The Legislature specified only two conditions under which an employee of a legal entity operating a theatre which shows motion pictures is excluded from the exemption. This penal statute is to be strictly construed. Considering the clear and unambiguous language of the statute in its natural and ordinary signification, we cannot find that the Legislature contemplated other conditions, such as the nature of the duties performed by an employee, which would defeat the exemption. The statute, therefore, establishes two classes. Any individual, partnership, firm, association, corporation, or other legal entity, except an employee of any such legal entities operating a theatre which shows motion pictures, if the employee is not an officer thereof or has no financial interest therein other than receiving salary and wages, constitute the first class. Those persons exempted from the first class constitute the second class. A member of the first class is guilty of a misdemeanor and subject to imprisonment and fine if he violates the provisions of § 418. A member of the second class is not.

## III

Swingers Life, Inc. operated a "bookstore" in Baltimore City which sold not only books and magazines ranging from the pristine to the pornographic, but also rubber supplies, prophylactics, condoms and "marital aids," described at the trial as including "dildos or vibrators or electrical devices of some type or another." A sign on the front of the first floor, commercial type premises of the store warned: "You must be 21 years of age to enter." It is plain that Swingers Life, Inc. was not a legal entity operating a theatre showing motion pictures.

Wheeler had been employed by Swingers Life, Inc. for two and a half years as a cashier. He described his duties thus:

> "I just stand behind the cash register, behind the counter and people, customers pick up the stuff and bring it up there. I just ring it up."

His testimony to the effect that he was merely an employee of the corporation with no financial interest in the business other than his salary was not contradicted.

Wheeler was standing behind a "podium-type counter" toward the front corner of the store opposite the doorway, when Detective John Dillon, assigned to the Criminal Investigation Division of the Baltimore City Police Department, entered the establishment and selected a magazine entitled "Linda Lovelace, Star of Deep Throat." The officer handed the magazine to Wheeler with the purchase price of $5.20. Wheeler placed the magazine in a brown paper bag and handed the bag to the officer. This sale was the basis of the conviction.

Wheeler does not dispute that he sold obscene matter in this State. He seeks to set aside this conviction, however, on two grounds: (1) he did not sell obscene matter "knowingly" as required by the statute because the evidence was legally insufficient to establish scienter on his part; and (2) § 418, considered with § 417 (2), is unconstitutional on its face in that it denies him equal protection of the laws.[2] We do not reach the first ground because we agree that § 418, in light of § 417 (2), is unconstitutional on its face.

## IV

The equal protection clause of the Fourteenth Amendment has been said by some to be "undoubtedly one of the majestic generalities of the Constitution." *Trimble v. Gordon,* 430 U. S. 762, 777, 97 S. Ct. 1459 (1977) (Rehnquist, J. dissenting). Its meaning and scope have troubled the Supreme Court almost as much as has the definition of obscenity. Mr. Justice Rehnquist, tracing the history of the clause and offering a critique of the Court's decisions in his dissenting opinion in *Trimble,* declared that during the period of more than a century since its adoption, the Court had not developed a

---

2. "No State shall ... deny any person within its jurisdiction the equal protection of the laws." U. S. Const. amend. XIV.

Wheeler presented three other questions in his brief but withdrew them at oral argument before us in the face of a motion to dismiss them made by the State on the ground that they were not included in his petition for a writ of certiorari.

consistent body of doctrine which could reasonably be said to expound the intent of those who drafted and adopted that clause. Nor had it recognized that those who drafted and adopted the clause had rather imprecise notions about what it meant, and thereupon evolved a body of doctrine which both was consistent and served some arguably useful purpose. "Except in the area of the law in which the Framers obviously meant it to apply — classifications based on race or national origin, the first cousin of race — the Court's decisions can fairly be described as an endless tinkering with legislative judgments, a series of conclusions unsupported by any central guiding principle." *Trimble* at 777. Aware that this view is not without merit, we, nevertheless, see in the Court's opinions a certain consistency of rule even if not of application.

Equal protection analysis requires strict scrutiny of legislative classification when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class. Classifications based upon race, alienage, and national origin are inherently suspect.[3] When fundamental rights or a suspect class are involved, the classification must be subjected to close judicial scrutiny and must be justified by a compelling state interest. *See, e.g.,* as to fundamental rights, *Roe v. Wade,* 410 U. S. 113, 93 S. Ct. 705 (1973) (right to privacy); *Bullock v. Carter,* 405 U. S. 134, 92 S. Ct. 849 (1972) (right to vote); *Shapiro v. Thompson,* 394 U. S. 618, 89 S. Ct. 1322 (1969) (right to interstate travel); *Williams v. Rhodes,* 393 U. S. 23, 89 S. Ct. 5 (1968) (1st Amendment rights); *Skinner v. Oklahoma,* 316 U. S. 535, 62 S. Ct. 1110 (1942) (right to procreate); *State v. Schuller,* 280 Md. 305, 372 A. 2d 1076 (1977) (1st Amendment rights). *See generally, Massachusetts Bd. of Retirement v. Murgia,* 427 U. S. 307, 96 S. Ct. 2562 (1976); *San Antonio School District v. Rodriguez,* 411 U. S. 1, 93 S. Ct. 1278, *reh. denied,* 411 U. S. 959 (1973). As to suspect classes, *see e.g., Graham v.*

3. It may be that discrimination based upon sex is within the ambit of suspect classifications. *See* Frontiero v. Richardson, 411 U. S. 677, 93 S. Ct. 1764 (1973) in which four members of the Court so held. *See also* Md. St. Bd. of Barber Ex. v. Kuhn, 270 Md. 496, 506, 312 A. 2d 216 (1973); 6 U. Balt. L. Rev. 313, 322-323, n. 55 (1977); Note, 29 Okla. L. Rev. 711 (1976).

*Richardson,* 403 U. S. 365, 91 S. Ct. 1848 (1971) (alienage); *Loving v. Virginia,* 388 U. S. 1, 87 S. Ct. 1817 (1967) (race); *McLaughlin v. Florida,* 379 U. S. 184, 85 S. Ct. 283 (1964) (race); *Oyama v. California,* 332 U. S. 633, 68 S. Ct. 269 (1948) (national origin); *Korematsu v. United States,* 323 U. S. 214, 65 S. Ct. 193 (1944) (national origin).

Under "traditional" equal protection analysis, a legislative classification must be sustained unless it is "patently arbitrary" and bears no rational relationship to a legitimate governmental interest. *Ohio Bureau of Employment Services v. Hodory,* 431 U. S. 471, 97 S. Ct. 1898 (1977); *Massachusetts Bd. of Retirement v. Murgia, supra; Hughes v. Alexandria Scrap Corp.,* 426 U. S. 794, 96 S. Ct. 2488 (1976); *United States Department of Agriculture v. Moreno,* 413 U. S. 528, 93 S. Ct. 2821 (1973); *Dandridge v. Williams,* 397 U. S. 471, 90 S. Ct. 1153 (1970); *McGowan v. Maryland,* 366 U. S. 420, 81 S. Ct. 1101 (1961); *Lindsley v. Natural Carbonic Gas Co.,* 220 U. S. 61, 31 S. Ct. 337 (1911). This is known as the "reasonable basis" test, sometimes termed the "rational relationship" test or the "fair and substantial relationship" test, and has been consistently applied by this Court. *Aero Motors v. Adm'r M.V.A.,* 274 Md. 567, 574-576, 337 A. 2d 685 (1975) and cases cited therein; *Bowie Inn v. City of Bowie,* 274 Md. 230, 240-241, 335 A. 2d 679 (1975); *Prince George's Co. v. McBride,* 268 Md. 522, 531-532, 302 A. 2d 620 (1973); *Adm'r, Motor Veh. Adm. v. Vogt,* 267 Md. 660, 671-673, 299 A. 2d 1 (1973); *Police Comm'r v. Siegel, Etc., Inc.,* 223 Md. 110, 130-134, 162 A. 2d 727, *cert. denied,* 364 U. S. 909 (1960).

The statute here involves neither a suspect class nor a fundamental right. Uncertain as other matters with regard to obscenity may be, the Supreme Court has categorically settled that obscene material is unprotected by the First Amendment. *Miller v. California,* 413 U. S. 15, 23, 93 S. Ct. 2607, *reh. denied,* 414 U. S. 881 (1973). Thus, the reasonable basis test is applicable. We said in *Md. St. Bd. of Barber Ex. v. Kuhn,* 270 Md. 496, 507, 312 A. 2d 216 (1973) that this test requires "at a minimum, that a statutory classification bear some 'rational relationship' to a legitimate state purpose . . .; or that the legislative classification rest upon some ground

of difference having a fair and substantial relation to the object of the legislation . . . ." (Citations omitted). "[A] classification made by a Legislature is presumed to be reasonable in the absence of clear and convincing indications to the contrary, and the person who assails it has the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary. *Tatelbaum v. Pantex Mfg. Corp.,* 204 Md. 360, 370-371, 104 A. 2d 813 (1954), citing *Lindsley v. Natural Carbonic Gas Co., supra,* and *Salsburg v. State,* 201 Md. 212, 94 A. 2d 280 (1953), *aff'd,* 346 U. S. 545 (1954). What we said in *Kuhn* and *Tatelbaum* is the substance of the *Lindsley* test which we set out in full in *Adm'r, Motor Veh. Adm. v. Vogt,* 267 Md. at 671, noting: "While more than sixty years have passed since that decision, in the course of which many cases have been decided on the same issue, the principles enunciated there have lost none of their vitality." *Id.* at 672. We repeated the *Lindsley* test in *Aero Motors v. Adm'r, M.V.A.,* 274 Md. at 574-575, affirmed its vitality and applied it.

"Equal protection does not require that all persons be dealt with identically, but it does require that a distinction made have relevance to the purpose for which the classification is made." *Baxstrom v. Herold,* 383 U. S. 107, 111, 86 S. Ct. 760 (1966). It was put this way in *Police Comm'r. v. Siegel, Etc., Inc.,* 223 Md. at 131: " 'The Equal Protection Clause does not require that every state regulatory statute apply to all in the same business, but a statutory discrimination must be based on differences reasonably related to the purpose of the act in which it is found.' " And in *Prince George's Co. v. McBride,* 268 Md. at 531, we said: "Compliance with the Equal Protection Clause requires that legislative classification rest upon some ground of difference having a fair and substantial relation to the object of the legislation." We summed it up thus in *Salisbury Beauty Schools v. St. Bd.,* 268 Md. 32, 60, 300 A. 2d 367 (1973):

> "If all persons who are in like circumstances or affected alike are treated under the laws the same, there is no deprivation of the equal protection of the law. Conversely, a law which operates upon some

persons or corporations, and not upon others like situated or circumstanced or in the same class is invalid."

The object of the Obscene Matter law is evident from the title of the 1967 Act. It was enacted "generally to revise the laws of the State pertaining to obscene matter; defining and *prohibiting the publication, printing, sale and distribution of such matter....*" (Emphasis supplied). To be valid, the exemption of motion picture theatre employees would have to rest upon some ground of difference having a fair and reasonable relation to the prohibition against the publication, printing, sale and distribution of obscene matter, or have a rational relationship to the legitimate state purpose.

The Court of Special Appeals thought that § 418 was constitutional "in that there is a rational basis for the legislative distinction between employees of bookstores and employees of motion picture theatres." *Wheeler,* 35 Md. App. at 378. The rational basis it found was that "[i]n a motion picture theatre there is not ordinarily any necessity for an employee, except the projectionists, to handle the film. In fact, it is highly doubtful that anyone other than the projectionist comes in contact with the film itself, and even his contact is limited. A seller of books and magazines can hardly make a sale without in some manner coming into physical contact with the item sold. Furthermore, while controls may be placed so as to regulate the age of all who enter the theatre to see the film, no such controls are present when obscene material, such as the magazine in the instant case, is once removed from the seller's premises. Patently, it is unlikely that film will be transported from the motion picture establishment so as to become available for viewing by juveniles." *Id.* at 377. We do not see the relevance in the degree to which the obscene matter is handled. In any event, it seems that a film projectionist, attaching the reels, threading the film in the projector, activating the projector, splicing broken film, and rewinding the film, comes into contact with the obscene matter no less than a salesclerk in a bookstore who accepts the article the purchaser has

selected, puts it in a bag and hands it back upon payment of the purchase price. We point out again, that the exemption applicable to § 418 through § 417 (2) is not confined to projectionists, but to all employees within the classification. Even though a ticket seller, usher or other employee does not come into physical contact with the film itself, they are furthering the distribution of the prohibited material. Nor do we believe, in the circumstances here, that the juvenile rationale is sufficient to support a reasonable basis. "Distribute" as defined by the statute "means to transfer possession of, whether with or without consideration." Code (1957, 1976 Repl. Vol.) Art. 27, § 417 (3). The bookstore employee would not be criminally responsible, absent a conspiracy, for a further sale or distribution of the obscene matter to a third person by the original purchaser, although the original purchaser, if not within the exempted class, would then be subject to the Act. Further, the Legislature has fully covered the dissemination of obscene matter to juveniles. Code (1957, 1976 Repl. Vol.) Art. 27, §§ 416A-416G. We do not think that the mere possibility of further distribution after a sale in a bookstore, in itself, warrants the classification. The basic fallacy, however, in the reasoning of the Court of Special Appeals is that the statute cannot be read so that the exemption pertains only to the showing of motion pictures as such. Thus, an usher in the exempted class who distributes to the theatre patrons a program concerning the film being shown, which program itself constituted obscene matter, would not be subject to the prohibitions of § 418. The bookstore employee, however, or any other person not within the exempted class, who distributed that same program, would be subject to punishment for violation of the statute. Thus, the law operates on some persons and not upon others like situated or circumstanced.

There is, of course, a distinction which may be drawn between obscene motion pictures and other obscene matter.[4]

---

4. " 'Matter' means any book, magazine, newspaper, or other printed or written material or any picture, drawing, photograph, motion picture, or other pictorial representation or any statue or other figure, or any recording, transcription or mechanical, chemical or electrical reproduction or any other

But the Supreme Court has said that "the States have greater power to regulate nonverbal, physical conduct than to suppress depictions or descriptions of the same behavior." *Miller v. California,* 413 U. S. at 26, n. 8. It correlated films and pictures with live conduct: "Sex and nudity may not be exploited without limit by films or pictures exhibited or sold in places of public accommodations any more than live sex and nudity can be exhibited or sold without limit in such public places." *Id.* at 25-26. Therefore, when the governmental objective is to prohibit the distribution of obscene matter, a classification predicated upon control of obscene films and pictures stricter than that imposed on other obscene matter may not be thereby rendered invalid. However, a classification based upon control of obscene films and pictures more lenient than those imposed on other obscene matter certainly could not serve as a rational basis for that classification in light of the governmental objective.

Despite the heavy burden imposed upon Wheeler, he has established that to the extent § 418 prohibits some employees of legal entities from selling, distributing, publishing and printing obscene matter while allowing other employees to do so, it violates the Equal Protection Clause of the Fourteenth Amendment. The statutory discrimination is not based on differences reasonably related to the purpose of the Act in which it is found, and the distinction has no relevance to the purpose for which the classification is made. In the face of the plain language of the statute, to read the exception for salaried theatre employees in § 417 (2) to be "limited to the activities of these employees in 'the showing of motion pictures' and not otherwise," as the dissenting opinion would have it, manifestly puts judicial preference before legislative intent, contrary to the firmly established rules of construction. As the classification applicable to § 418 through § 417 (2) is without any reasonable basis, it is purely arbitrary. We hold that it is constitutionally invalid. *See Md. St. Bd. of Barber Ex. v. Kuhn,* 270 Md. at 509-510.

---

articles, equipment, machines or materials." Maryland Code (1957, 1976 Repl. Vol.) Art. 27, § 417 (1).

## V

The severability clause enacted by Acts 1967, ch. 394, § 2 does not save § 418.[5] *State v. Schuller,* 280 Md. at 318-321, is dispositive of the point. We noted the general rule, expressed in *Davidson v. Miller,* 276 Md. 54, 83, 344 A. 2d 422 (1975), and *Shell Oil Co. v. Supervisor,* 276 Md. 36, 48, 343 A. 2d 521 (1975), that "a court, after finding that a statute is invalid in some respect, will separate the valid from the invalid provisions *wherever possible." Schuller* at 319. We referred to *Police Comm'r v. Siegel, Etc., Inc., supra,* in which we adopted the opinion of the trial court. We quoted from that opinion:

> " 'A severability clause does not constitute an absolute or inexorable command; it is merely an aid to interpretation. The test of severability is the effectiveness of an act to carry out, without its invalid portions, the legislative intent in enacting it.' " *Schuller* at 319 (quoting *Siegel,* 223 Md. at 134).

We pointed to *Siegel,* 223 Md. at 131-134, *Baltimore v. A. S. Abell Co.,* 218 Md. 273, 290, 145 A. 2d 111 (1958) and cases therein cited, as examples of decisions of ours in which we declined to separate the valid from the invalid portions of the statute in the face of a severability clause. We declared:

> "A long established principle of statutory construction in determining severability questions, is that where the Legislature enacts a prohibition with an excepted class, and a court finds that the classification is constitutionally infirm, the court will ordinarily not presume that the Legislature would have enacted the prohibition without the exception, thereby extending the prohibition to a class of persons whom the Legislature clearly intended should not be reached." *Schuller,* 280 Md. at 319.

5. When the law with regard to obscene and other objectionable publications was enacted by Acts 1955, ch. 720, provision was made for severability and was later codified as § 425 of Article 27 of the Maryland Code. The provision disappeared from the Code upon the enactment of Acts 1967, ch. 394. *See* Maryland Code (1957, 1976 Repl. Vol.), Art. 1, § 23.

As we have seen, the Legislature in dealing with obscene matter enacted prohibitions with an excepted class. We have found that the classification is constitutionally infirm. If the provision exempting persons from the prohibitions be eliminated, § 418, as it stands, will apply to "any individual, partnership, firm, association, corporation, or other legal entity" as it did before the 1968 amendment. Those persons now exempted would in that way be reached and imprisoned and fined, when, manifestly, the Legislature intended by the amendment that they not be regarded as offending the law even if they engaged in the prohibited conduct. Looking, then, at § 418 in light of § 417 (2), we must hold that the Legislature would not have continued the policy indicated by the statute unless those exempted by the 1968 Act were excluded from its operation, and thereby protected from prosecution. The result is that we may not excise the exemption contained in § 417 (2) and applicable to § 418 and leave § 418 standing. Therefore, § 418 must be adjudged to be unconstitutional as denying the equal protection of the laws to those within its jurisdiction who are not embraced by the exception in § 417 (2). This result is in full accord with the rationale of *Connolly v. Union Sewer Pipe Co.,* 184 U. S. 540, 565, 22 S. Ct. 431 (1902), quoted in *Schuller* at 319-320, and cited with approval in *Storck v. Baltimore City,* 101 Md. 476, 486-487, 61 A. 330 (1905). *See also Nutwell v. Anne Arundel Co.,* 110 Md. 667, 672-673, 73 A. 710 (1909); *compare, Greene v. State,* 11 Md. App. 106, 107-111, 273 A. 2d 830 (1971). To allow § 418 to stand after severing the exemption provisions, would thwart the purpose of the Legislature, as persons who were clearly intended to be excepted from the provisions of the law will be subject to its prohibitions. A construction leading to such a result cannot be approved. Nor can we properly extend the exemption to include all employees of any legal entity (even with the limitation that they not be officers thereof or have no financial interest therein other than receiving salary or wages), whether or no the legal entity employing them operated a theatre for the showing of motion pictures. That construction of the statute would certainly be at odds with the legislative intent. Under

the firmly established rules of statutory construction, such a revision would be properly a matter for legislative determination and impermissible through judicial decision.

> *Judgment of the Court of Special Appeals reversed; case remanded to that court for remand to the Criminal Court of Baltimore with direction to dismiss the indictment; costs to be paid by the Mayor and City Council of Baltimore.*

*Murphy, C. J., dissenting:*

The Court today strikes down as unconstitutional Maryland's Obscene Matter Act, Maryland Code (1957, 1976 Repl. Vol.), Art. 27, §§ 417 (2) and 418, on the ground that these sections violate the equal protection clause of the Fourteenth Amendment. Since the Court finds that the constitutionally offending provisions of § 417 (2) are not severable from the basic proscriptions of § 418, Maryland is left without any law inhibiting the distribution or sale of obscene matter, other than to juveniles.[1] Were this result commanded by the Constitution of the United States, or by the Constitution of Maryland, I would, of course, unhesitatingly join the Court's opinion. Since it is not — indeed since the result reached by the Court is so plainly at odds with what I perceive to be the governing law — I must respectfully dissent.

Section 418 provides that any person who sells or distributes obscene matter is guilty of a misdemeanor; § 417 (2) provides that § 418 does not apply to a salaried employee of an entity "operating a theatre which shows motion pictures," if the salaried employee has no other financial interest in the theatre. A distinction is thus drawn between employees of bookstores and employees of theatres which show motion pictures.

The Court says that § 417 (2) cannot be read to limit the

---

1. *See* Maryland Code, Art. 27, §§ 416A-416G, inclusive.

theatre-employee exception to the showing of motion pictures. It, therefore, concludes that a theatre usher who distributes an obscene pamphlet in the course of his employment with the theatre cannot be prosecuted under § 418, while a bookstore employee who distributes the same obscene pamphlet is subject to prosecution under that section.

What is so obviously intended by the legislature, and so easily gleaned from its language, read in a common sense way, is that the § 417 (2) exception for salaried theatre employees is limited to the activities of these employees in the "showing of motion pictures" and not otherwise. The distribution or sale of obscene pamphlets by a theatre employee is an act separate and distinct from the showing of motion pictures; thus, if such an employee distributes an obscene pamphlet in the theatre, whether connected with the showing of the motion picture or not, he would not be performing a function within the ambit of the exception, and would be subject to prosecution under § 418.

The Court states, quite correctly I think, that a legislative classification which involves, as here, neither a fundamental right nor a suspect class, must be sustained unless it is patently arbitrary and bears no rational relationship to a legitimate governmental interest. The Court readily acknowledges that statutes are presumed constitutional and that the equal protection clause does not command that different classes of persons be treated identically and equally in every situation. In properly applying the rational basis test in this case, the Court refers to *Aero Motors v. Adm'r, M.V.A.,* 274 Md. 567, 337 A. 2d 685 (1975), where we recognized the following principles:

> 1. The equal protection clause of the Fourteenth Amendment does not take from the State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary.

> 2. A classification having some reasonable basis does not offend against that clause merely because

it is not made with mathematical nicety or because in practice it results in some inequality.

3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed.

4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary.

In my judgment, the distinction between motion picture theatre employees and other employees drawn by § 417 (2) and § 418 rests upon a ground of difference having a fair and substantial relation to the objective of the legislation. As Chief Judge Gilbert so cogently observed for the Court of Special Appeals in affirming the judgment in this case:

". . . in a motion picture theatre there is not ordinarily any necessity for an employee, except the projectionists, to handle the film. In fact, it is highly doubtful that anyone other than the projectionist comes in contact with the film itself, and even his contact is limited. A seller of books and magazines can hardly make a sale without in some manner coming into physical contact with the item sold. Furthermore, while controls may be placed so as to regulate the age of all who enter the theatre to see the film, no such controls are present when obscene material, such as the magazine in the instant case, is once removed from the seller's premises. Patently, it is unlikely that a film will be transported from the motion picture establishment so as to become available for viewing by juveniles." 35 Md. App. at 377.

It is, of course, the function of a motion picture theatre to show motion pictures to its patrons, and not to distribute printed matter, while the function of a bookstore is to sell books and magazines. A theatre showing motion pictures may

regulate who sees what is shown on the screen; the viewer has no means to disseminate the film beyond the confines of the theatre. In contrast, once printed matter is removed from a bookseller's premises, it and its corrupting influence may be distributed and redistributed without limit to anyone, including juveniles. Under § 417 (3), a person who "transfer[s] possession" of obscene matter is a distributor subject to prosecution under § 418, as is a person who sells or "prepares, publishes, prints [or] exhibits" such matter. The legislature could properly take into account the remote nature of the contact of the exempted theatre employees with the actual showing of an obscene film, and rationally conclude that the limited reach of the film did not justify seeking to prevent its exhibition by punishing employees having no direct responsibility for its showing. As we noted in *Matter of Trader,* 272 Md. 364, 399, 325 A. 2d 398 (1974), the problems of government are practical ones and may justify, if they do not require, rough accommodations — illogical and unscientific though they may be. That we may think that a legislative classification is unwise, does not justify our striking it down, so long as it is constitutional.

Just this year, the Supreme Court, in *Ohio Bureau of Employment Services v. Hodory,* 431 U. S. 471, 97 S. Ct. 1898, 52 L.Ed.2d 513 (1977), reaffirmed the validity of the rational basis test in equal protection cases. It emphasized that classification in legislation pursuant to the state's police power is a peculiarly legislative task; it said:

> "The decision of the weight to be given the various effects of the statute, however, is a legislative decision, and appellee's position is contrary to the principle that 'the Fourteenth Amendment gives the federal courts no power to impose upon the States their views of what constitutes wise economic or social policy.' *Dandridge v. Williams,* 397 U. S. 471, 486, [90 S. Ct. 1153, 1162, 25 L.Ed.2d 491] (1970) . . . .

> " . . . 'If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results

in some inequality." *Lindsley v. Natural Carbonic Gas Co.,* 220 U. S. 61, 78, 31 S. Ct. 337, 55 L.Ed. 369.' *Dandridge v. Williams,* 397 U. S. at 485, 90 S. Ct. at 1161...." 97 S. Ct. 1909-1910.

Surely, the statutes here meet the test of whether any state of facts can reasonably be conceived that would sustain them. Of course, the mere ability to find fault with a law demonstrates neither its invalidity nor its unconstitutionality. *Matter of Trader,* 272 Md. at 391-392.

The presumption of a statute's constitutionality can be overcome only by an explicit demonstration by the one attacking it that the classification drawn is invidiously discriminatory. In *Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U. S. 356, 364-365, 93 S. Ct. 1001, 35 L.Ed.2d 351 (1973), the Supreme Court said:

> " 'A state legislature, in the enactment of laws, has the widest possible latitude within the limits of the Constitution. In the nature of the case it cannot record a complete catalogue of the considerations which move its members to enact laws. In the absence of such a record courts cannot assume that its action is capricious, or that, with its informed acquaintance with local conditions to which the legislation is to be applied, it was not aware of facts which afford reasonable basis for its action. Only by faithful adherence to this guiding principle of judicial review of legislation is it possible to preserve to the legislative branch its rightful independence and its ability to function.' "

*See also Madden v. Kentucky,* 309 U. S. 83, 60 S. Ct. 406, 84 L. Ed. 590 (1940); *Carmichael v. Southern Coal Co.,* 301 U. S. 495, 57 S. Ct. 868, 81 L. Ed. 1245 (1937). Consistent with this authority, I would conclude that the difference in treatment between motion picture theatre employees and other employees is not so irrational as to be invidiously discriminatory on its face.

Assuming, *arguendo,* that the § 417 (2) exception violates

the equal protection clause, the Court's holding that that provision is not severable from the body of the Obscene Matter Act, and that the entire act, including § 418, must fall, plainly thwarts the legislative intention. The fundamental test of severability is the effectiveness of the statute to carry out the original legislative intent without the invalid provisions. *State v. Schuller,* 280 Md. 305, 372 A. 2d 1076 (1977); *Shell Oil Co. v. Supervisor,* 276 Md. 36, 343 A. 2d 521 (1975). In view of the Maryland General Assembly's long and consistent history of enacting penal statutes prohibiting the sale and distribution of obscene matter, it is inconceivable to me that it would not want § 418 to retain its vitality, even if § 417 (2) was found to be unconstitutional.

In any event, since I think the sections in question fully comport with equal protection principles, I would affirm the judgment of the Court of Special Appeals.

Judge Levine has authorized me to state that he concurs with the views expressed herein.